**Gregory Donald LILLY, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 1183S411.**

Supreme Court of Indiana.

Sept. 9, 1985.

John H. McKenna, Gary, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is a direct appeal from a conviction of burglary, a class B felony, I.C. § 35–43–2–1. The case was tried before a jury. Appellant received a fourteen year sentence.

Appellant raises four issues on appeal: (1) whether the trial court erred in denying his motion for a directed verdict; (2) whether there was sufficient evidence to support his conviction; (3) whether trial court erred in admitting State's Exhibit Two into evidence; and (4) whether the trial court erred in denying his motion for dismissal.

These are the facts from the record that tend to support the determination of guilt. On August 5, 1980, at approximately 9:00 p.m., Edward Hood locked the unfinished house he was building and then departed with his family. At approximately 10:30 p.m., he received a telephone call from a neighbor that indicated that there might be someone in the house. He had not given anyone permission to enter the house. He returned to the house with his family; they noticed that the patio door and the rear garage door were open. Subsequently, he went to James Williams' house, left his children and borrowed a shotgun. Hood, his wife, and Williams then went to the unfinished house. Hood's wife went to a nearby home to call the police. Meanwhile, as Hood walked toward the house, he observed an individual exit from the backdoor and walk down the street. Hood asked the individual if he was in the house. Hood made no effort to stop this individual. Hood then entered the house, and he observed appellant exit from the rear garage door. Appellant was carrying a hammer, trowel and nail apron which belonged to Hood. Also, toilet fixtures, electrical wiring and other items had been removed from the house. Subsequently, Hood ordered appellant to halt. Appellant stopped and told Hood that he worked in the house. Hood told appellant that he was the builder. Thereafter, appellant advanced toward Hood; consequently, Hood struck appellant with the butt of the shot gun. At this point, Williams approached and suggested

that they search appellant. They discovered a small caliber handgun on appellant. Soon after, police sirens could be heard and appellant got up and ran toward the woods. Appellant was returned to the site of the incident in an ambulance and Hood identified him. Both Hood and Williams identified appellant at trial.

## I & II

Appellant argues that there was insufficient evidence to survive a directed verdict motion and to support his burglary conviction. This Court will not weigh the evidence nor judge the credibility of the witnesses. Rather, we will consider only that evidence most favorable to the State and all reasonable inferences to be drawn therefrom which support the verdict. If there is substantial evidence of probative value which would permit a reasonable trier of fact to find the existence of each element of the offense beyond a reasonable doubt the judgment must be affirmed. *Reed v. State* (1979), 185 Ind.App. 5., 387 N.E.2d 82; see also *Henderson v. State* (1980), 273 Ind. 334, 403 N.E.2d 1088.

The evidence stated in the statement of facts is clearly sufficient to survive a directed verdict motion and to support his burglary conviction.

Appellant claims that there was no credible evidence that appellant was armed with a deadly weapon. The sole evidence of this element was provided by the two eyewitnesses Hood and Williams who testified that they took a gun from appellant's pocket, by officer Farmer who saw a gun passed to Sgt. Mitchell at the scene by the eyewitnesses and the photograph of a gun.

Appellant also claims that there was no credible evidence that he engaged in a breaking and entering of the building, since after testifying that he saw appellant leaving the building, the victim Hood placed himself in various positions about the house as to have required him to see around corners.

Appellant also claims that there was no credible evidence of his intent to commit a

felony, even though at the time of his confrontation by Hood, appellant was carrying tools belonging to Hood, since appellant offered an explanation of his reason for being there and carrying the tools.

These arguments seek to induce this Court to reweigh the trial evidence. The testimony of these witnesses as to the gun taken from appellant's pocket at the scene and the emergence of appellant from the house with chattels from within, based upon personal observation, if believed by the jury, was sufficient evidence to support the conviction on the points raised. *Landrum v. State* (1981), Ind., 428 N.E.2d 1228; *Beard v. State* (1983), Ind., 448 N.E.2d 1078.

### III

Appellant claims that error occurred when the trial court overruled his objection to State's Exhibit Two, a photograph of a handgun. The objection was based upon the lack of a showing of chain of custody for the gun itself and the fact that the photograph was not the best evidence. The gun was never produced at trial.

The exhibit is a large color photograph of a revolver with a short barrel and a handle wrapped with some type of string, wire or rubber band. The letters "WLM" and the numbers "8/6/80" are scratched into the metal on the side of the gun, and are clearly discernible. The photograph was identified by the alleged victim Hood as depicting a pistol which appeared to be the one which he took from appellant and turned over to the officers from the Gary police on the night of August 5, 1980. He also recalled that on the night of the crime the handle of the gun felt like it was wrapped with something. Officer Farmer testified that on the night of August 5, 1980, he heard Hood tell Sergeant Walter Mitchell that he, Hood, had taken a gun, a small .22 revolver, from one of the fellows that had run off. Officer Farmer also testified that he first saw the gun when it was given to Mitchell by Hood. He testified further that the gun in the photograph appeared to be the same one at the scene,

basing his statement on his recollection of the way it looked, his familiarity with the usual method Sergeant Mitchell followed in marking such items of evidence by scratching his initials by the hammer, and the date appearing on the item.

The evidentiary purpose of the state's photograph was to prove that appellant had a deadly weapon on his person when committing the burglary. The state sought by it to prove the existence of a particular gun, and to connect appellant and his crime with it. The photograph was used as a substitute for the gun itself. Therefore, it was encumbent upon the state to supply the legal foundation which would have been required for admission of the gun itself.

To establish a chain of custody, the state must provide evidence that strongly suggests the exact whereabouts of the item proffered while in possession of the police. *Zupp v. State* (1972), 258 Ind. 625, 283 N.E.2d 540. The rule applies with diminishing strictness as the items concerned become decreasingly susceptible to alteration, tampering or substitution. *Coleman v. State* (1975), 264 Ind. 64, 339 N.E.2d 51. Here, there is direct or circumstantial evidence that the gun depicted in the photograph was taken from appellant's pocket and turned over to Sergeant Mitchell on the night of August 6, 1980, who then shortly thereafter at the police station placed his initials on it. The victim and Officer Farmer testified that the gun in the photo looked like the one at the crime scene basing this assertion in part upon the peculiar wrappings on the handle. The photograph depicts a gun with Sergeant Mitchell's initials, the date of August 6, 1980, and peculiar handle wrappings. This matter was more than sufficient to satisfy the foundation requirements for admission of the photograph over the objection.

Appellant finally argues that the best evidence rule prohibits the introduction of State's Exhibit Two. To the extent that such a rule exists, it is restricted to documentary type evidence. *Pinkerton v.*

*State* (1972), 258 Ind. 610, 283 N.E.2d 376. The law approves the use of photographs to prove the existence and nature of material and relevant physical objects and scenes, so long as they are true and accurate. Here the objection was not grounded in the lack of truth and accuracy. The exhibit was not excludable on this basis.

## IV

■ Appellant argues that the prosecutor was vindictive in filing a habitual offender information against him after the post-conviction court granted him a new trial. Therefore, he contends that the trial court erred in denying his motion to dismiss.

> Questions of prosecutorial vindictiveness are not easy to resolve because two antithetical interests are brought into conflict. One is the due process right of the defendant to be free of apprehension that he will be subjected to an increased punishment if he exercises his right to attack his conviction and the other is the substantial discretion traditionally accorded the prosecutor in controlling the decision to prosecute. Blackledge and its progeny show that there must be a balancing of the defendant's interest against that of the state in order to protect both these interest. Blackledge, supra; *United States v. Andrews*, (6th Cir. 1980) 612 F.2d 235; *Miracle v. Estelle*, (5th Cir.1979) 592 F.2d 1269; *Jackson v. Walker*, (5th Cir.1978) 585 F.2d 139; *United States v. Groves*, (9th Cir.1978) 571 F.2d 450; *United States v. Alvarado-Sandoval*, (9th Cir.1977) 557 F.2d 645; *United States v. Jamison*, (D.C.Cir.1974) 505 F.2d 407.

> In analyzing Blackledge and Pearce, we find it is clear that when the prosecution has occasion to file more numerous or more severe charges for the same basic criminal conduct against an accused after the accused has successfully exercised his statutory or constitutional rights to an appeal, the prosecution bears a heavy burden of proving that any increase in the number or severity of the charges

was not motivated by a vindictive purpose.
*Cherry v. State* (1981), 275 Ind. 14, 414 N.E.2d 301.

Although the record shows that the prosecutor filed the contested habitual offender information, appellant was not tried or sentenced on it. Since appellant would have only been entitled to dismissal of the habitual offender information, any error in denying his motion to dismiss was harmless.

The conviction is affirmed.

GIVAN, C.J., and PRENTICE and PIVARNIK, JJ., concur.

HUNTER, J., not participating.