**Ronnie ALVERS, Defendant-Appellant,**

v.

**STATE of Indiana, Plaintiff-Appellee.**

**No. 1–585A116.**

Court of Appeals of Indiana,
First District.

Feb. 18, 1986.

Rehearing Denied April 4, 1986.

Glenn A. Grampp, Lopp, Lopp & Grampp, Evansville, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Office of Attorney General, Indianapolis, for plaintiff-appellee.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Ronnie Alvers appeals his conviction for Corrupt Business Influence, a class C felony, in violation of Indiana Code sections 35–45–6–2 [1] and 35–43–4–2.[2] We affirm.

## FACTS

In 1984, Ronnie Alvers (Alvers) was indicted for Corrupt Business Influence, a class C felony, in violation of Indiana Code section 35–45–6–2. Alvers had worked in the jewelry business since November of 1970. From October of 1977, through October of 1978, Alvers was self-employed in the jewelry business and worked out of his home. On October 16, 1978, Alvers incorporated his business under the name of Alvers Jewelers, Inc. and conducted business from a commercial location in Evansville, Indiana. He continued at this location until August of 1984, when he ceased doing business due to adverse publicity generated by the investigation leading to his indictment. Alvers was charged with seven specific acts of two basic types—receiving stolen property and substituting cubic zirconias for diamonds in jewelry that was submitted for repairs, thereby evidencing a pattern of racketeering activity. On October 19, 1984, the jury returned a guilty verdict. Thereafter, Alvers perfected this appeal. Additional facts necessary to the discussion will be developed below.

## ISSUES

While Alvers presents ten issues for review, we find that these are subsumed into four basic issues.

1. Whether the trial court erred in denying Alvers' first Motion to Quash.

2. Whether the trial court erred in permitting the jury to determine whether Alvers Jewelers, a corporation, was an enterprise as defined in Indiana Code section 35–45–6–1.

3. Whether the trial court erred in permitting Delores Sailer and Katherine Sprague to testify as to prior acts allegedly committed by Alvers.

4. Whether the trial court erred in giving final instruction No. 15 and refusing to give Alvers' tendered instruction No. 5.

## DISCUSSION AND DECISION

*Issue One*

■ Alvers argues that the trial court erred in denying his first Motion to Quash because Indiana's anti-racketeering statute, Indiana Code sections 35–45–6–1 and 35–45–6–2, is preempted by the federal statute prohibiting racketeer influenced and corrupt organizations (RICO). 18 U.S.C.A. sections 1961–1968 (West 1984). Preemption is a judicially created doctrine based on the Supremacy Clause of the Constitution. Preemption is employed to reconcile the exercise of authority by the federal and state governments within a single frame-

1. The statute applicable at the time the crime was committed stated:
"Corrupt business influence
Sec. 2. (a) A person:
(1) who has knowingly or intentionally received any proceeds directly or indirectly derived from a pattern of racketeering activity, and who uses or invests those proceeds or the proceeds derived from them to acquire an interest in real property or to establish or to operate an enterprise;
(2) who through a pattern of racketeering activity, knowingly or intentionally acquires or maintains, either directly or indirectly, an interest in or control of real property or an enterprise; or
(3) who is employed by or associated with an enterprise, and who knowingly or intentionally conducts or otherwise participates in the activi-

ties of that enterprise through a pattern of racketeering activity;
commits corrupt business influence, a Class C felony."
Ind.Code sec. 35–45–6–2 (1982).

2. "Theft—Receiving stolen property.—(a) A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a class D felony.
(b) A person who knowingly or intentionally receives, retains, or disposes of the property of another person that has been the subject of theft commits receiving stolen property, a class D felony." Ind.Code Ann. sec. 35–43–4–2 (Burns 1985).

work. Consequently, a state law must yield if Congress preempts a particular field. *Boehringer-Mannheim Diagnostics, Inc. v. Pan American World Airways, Inc.* (5th Cir.1984), 737 F.2d 456, 459, *cert. denied* — U.S. —, 105 S.Ct. 951, 83 L.Ed.2d 959; *Norfolk & W. Ry. v. Brotherhood of Locomotive Engineers* (W.D.Va. 1978), 459 F.Supp. 136, 144. Congress may preempt an area by expressing its intent to supplant state law or it may regulate the subject so pervasively that it completely occupies the area. *Boehringer*, at 459. The federal RICO statute does not expressly preempt state law. Therefore, we must examine the pervasiveness of the regulation.

▆▆ In determining the existence of non-express preemption we must consider whether: (1) the area requires national uniformity, (2) there is evidence of congressional design to preempt the field, or (3) the state statute actually and directly conflicts with the federal provision. *Boehringer*, at 459. Indiana's statute does not conflict with the federal provision nor is there any evidence that Congress intended to preempt the field. The federal statute, aimed at preventing the influx of organized crime into enterprises, is geared towards interstate and international business, whereas Indiana's statute deals with intrastate concerns. The two statutes complement each other. There is no basis for Alvers' assertion that Indiana's anti-racketeering statute is preempted by RICO.

▆▆ Alvers also argues it was error to deny his Motion to Quash because the indictment was insufficiently precise and he was therefore not properly advised of the charges against him. The form of an indictment must substantially comply with the form delineated in the statute.[3] The information or indictment substantially complies with the statute if the wording specifically informs the accused of the charge against him. *Merry v. State* (1975), 166 Ind.App. 199, 209, 335 N.E.2d 249, 256, *trans. denied.* Defects or imperfections in a charging instrument are grounds for reversal only where they prejudice the substantial rights of the defendant. *Thorne v. State* (1973), 260 Ind. 70, 71, 292 N.E.2d 607, 608. In the present case, the indictment specifically states the acts committed and the nature and elements of those acts.[4] In addition, the indictment includes the ap-

---

3. Ind.Code Ann. sec. 35–34–1–2 (Burns 1985).

4. Omitting formal parts, the indictment states that:

"Ronnie Alvers between March, 1978 and May, 1984: did while associated with Alvers Jewelers knowingly participate in the activities of t[he] enterprise through a pattern of racketeering activity to wit: 1) did knowingly on or about Marc[h] 1978 through August, 1979 receive property of another, Elsfelder Jewelers, knowing the property to wit: various items of jewelry, had been the subject of a theft and thereby committed the cri[me] of receiving stolen property; 2) did knowingly on two (2) separate occasions between March 1979 and October 1979 exert unauthorized control of the property of another person, Jane Lovelace, wi[th] the intent to deprive that person of the value of that property, to wit: a ladies ring, by switching the stone in the ring with a stone of lesser value without the knowledge or consent of Jane Lovelace and thereby committed the crime of theft; 3) did knowingly on or about September, 1981 receive property of another person, Ted Cotton, knowing the property, to wit: a man's diam[ond] ring, had been the subject of a theft and thereby committed receiving stolen property 4) did knowingly on or about December, 1981 receive property of another, Deter's Jewelers, knowing the property, to wit: about twenty (20) Seiko wristwatches, had been the subject of a theft and thereby committed receiving stolen property; 5) did knowingly between April, 1982 and August, 19[82] exert unauthorized control over the property of another person, Rose Feldhaus, with the intent t[o] deprive that person of the value of that property to wit: a ladies ring, by switching the stone [in] the ring with a stone of lesser value without the knowledge or consent of Rose Feldhaus and ther[eby] committed the crime of theft; 6) did knowingly on or about June, 1982 through December, 1982 ex[ert] unauthorized control of the property of another person, Lela Meriweather and thereby committed the crime of theft; 7) did knowingly on or about March, 1984 through May, 1984 exert unauthorized control of the property of another person, Ruth Schiff, with the intent to deprive that person of the value of that property to wit: a ladies ring, by switching the stone [in] the ring with stone of lesser value without the knowledge or consent of Ruth Schiff and ther[eb]y committed the crime of theft."
Record at 37.

proximate dates and location acts were committed. Finally, the indictment conforms to all the procedural requirements of the statute. The indictment clearly notifies Alvers of the crimes for which he was charged and, therefore, does not prejudice him in any way. Consequently, Alvers' argument that the indictment failed to notify him of the charges against him is meritless and the trial court properly denied his motion to quash.

*Issue Two*

The majority of Alvers' appeal rests on the question whether a corporation is included in the definition of an "enterprise" as it was defined in Indiana's anti-racketeering statute at the time the acts were committed. Under the statute in effect at that time, "enterprise" was defined as a: "(1) sole proprietorship, partnership, business trust, or governmental entity; or (2) union, association, or group, whether a legal entity or merely associated in fact." Ind.Code sec. 35–45–6–1 (1982). On March 15, 1984, the Indiana legislature, by emergency amendment, added the word "corporation" to this definition. The statute now defines an "enterprise" as a: "(1) Sole proprietorship, corporation, partnership, business trust, or governmental entity; or (2) Union association, or group, whether a legal entity or merely associated in fact. . . ." Ind.Code sec. 35–45–6–1 (Burns 1985). The acts comprising Alvers' offense occurred while his business was incorporated and prior to the amendment of the statute. Hence, Alvers argues that, as a corporation, he did not fall within the definition of an "enterprise" as required by the anti-racketeering statute and was, therefore, charged with a crime that did not exist.

The Indiana anti-racketeering statute is essentially patterned after the federal RICO laws. *See* 18 U.S.C.A. sections 1961–1968 (West 1984). The federal RICO statute states that an " 'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity[.]" The

word "corporation" was included in this definition at the time of its enactment in 1970. The federal courts have determined that Congress gave the term "enterprise" a broad meaning. *United States v. Rone* (9th Cir.1979), 598 F.2d 564, *cert. denied* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780; *United States v. Hawes* (5th Cir.1976), 529 F.2d 472. *See United States v. Kovic* (7th Cir.1982), 684 F.2d 512, *cert. denied* 459 U.S. 972, 103 S.Ct. 304, 74 L.Ed.2d 284 (city police department is enterprise); *United States v. Angelilli* (2d Cir.1981), 660 F.2d 23, *cert. denied* 455 U.S. 945, 102 S.Ct. 1442, 71 L.Ed.2d 657 (enterprise includes governmental units); *United States v. Lee Stoller Enterprises, Inc.* (7th Cir. 1981), 652 F.2d 1313, *cert. denied* 454 U.S. 1082, 102 S.Ct. 636, 70 L.Ed.2d 615 (county sheriff's department is enterprise); *United States v. Sutton* (6th Cir.1980), 642 F.2d 1001, *cert. denied* 453 U.S. 912, 101 S.Ct. 3143, 69 L.Ed.2d 995 (use of jewelry store for fencing operation constituted enterprise); *United States v. Scotto* (2d Cir. 1980), 641 F.2d 47, *cert. denied* 452 U.S. 961, 101 S.Ct. 3109, 69 L.Ed.2d 971 (enterprise includes any union); *Eisenberg v. Gagnon* (E.D.Pa.1983), 564 F.Supp. 1347 (limited partnerships are enterprises); *United States v. Hawkins* (M.D.Ga.1981), 516 F.Supp. 1204 (individual may be enterprise); *State v. Buzz Berg Wrecking Co., Inc.* (D.Md.1980), 496 F.Supp. 245 (enterprise includes governmental organizations). As such, "enterprise" includes both legitimate and illegitimate businesses as well as informal, de fato associations. *United States v. Computer Sciences Corp.* (4th Cir.1982), 689 F.2d 1181, *cert. denied* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953; *United States v. Burns* (7th Cir.1982), 683 F.2d 1056, *cert. denied* 459 U.S. 1173, 103 S.Ct. 821, 74 L.Ed.2d 1018; *United States v. Provenzano* (3d Cir.1980), 620 F.2d 985, *cert. denied* 449 U.S. 899, 101 S.Ct. 267, 66 L.Ed.2d 129; *United States v. Elliott* (5th Cir.1978), 571 F.2d 880, *cert. denied* 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344; *United States v. Cappetto* (7th Cir.1974), 502 F.2d 1351, *cert. denied* 420 U.S. 925, 95 S.Ct. 1121, 43 L.Ed.2d 395. This liberal

interpretation of RICO extends to defining a corporation. *United States v. Computer Sciences Corp.* (4th Cir.1982), 689 F.2d 1181, *cert. denied* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (organization having no separate corporate existence, but having substantial number of corporate employees working within division known by organization's name, constitute "group of individuals associated in fact although not a legal entity" and thus was "enterprise"); *United States v. Hartley* (11th Cir.1982), 678 F.2d 961, *cert. denied* 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1014 (corporation can simultaneously be named as defendant and satisfy "enterprise" requirement); *United States v. Huber* (2d Cir.1979), 603 F.2d 387, *cert. denied* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (group of corporations can be "enterprise"); *United States v. Elliott* (5th Cir.1978), 571 F.2d 880, *cert. denied* 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (in defining "enterprise," there is no distinction between duly formed corporation and amoeba-like infra-structure that controls a secret criminal network); *B.F. Hirsch, Inc. v. Enright Refining Co.* (D.N.J.1983), 577 F.Supp. 339 (legitimate corporation constitutes "enterprise"); *United States v. Thevis* (N.D.Ga.1979), 474 F.Supp. 134, *affirmed* 665 F.2d 616, *cert. denied* 456 U.S. 1008, 102 S.Ct. 2300, 73 L.Ed.2d 1303, *cert. denied* 458 U.S. 1109, 102 S.Ct. 3489, 73 L.Ed.2d 1370, *cert. denied* 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 ("enterprise" is broad enough to embrace a group of individuals associated in fact with various corporations). An enterprise must be separate and apart from the pattern of activity in which it engages or, if not a legal entity, the enterprise must be a group of individuals associated together and engaging in a course of conduct with an ongoing organization for a common purpose. *Laterza v. American Broadcasting Co., Inc.* (S.D.N.Y.1984), 581 F.Supp. 408. Therefore, while a corporation clearly falls within the ambit of an "enterprise" as defined by the federal RICO laws, it is necessary in the present case to ascertain the Indiana legislature's intent through the rules of statutory construction.

While we are well aware of the prohibition against judicial legislation, we are also aware that there is often a fine line between such prohibited activity and permissible interpretation which provides legal guidance as to legislative intent. In fact, determining legislative intent is foremost in construing any statute and, wherever possible, this court will give deference to that intent. *Smith v. State Medical Licensing Bd.* (1984), Ind.App., 459 N.E.2d 401, 404; *Indiana State Highway Comm'n. v. Bates & Rogers Const., Inc.* (1983), Ind.App., 448 N.E.2d 321, 324; *Tapp v. State* (1980), Ind.App., 406 N.E.2d 296, 300, *trans. denied.* Indispensable to ascertaining the legislature's intent is a consideration of the goals sought to be achieved and the reasons and policy underlying a statute. *Frost v. Review Bd. of Indiana Employment Sec.Div.* (1982), Ind. App., 432 N.E.2d 459, 461. Consequently, it is necessary to view a statute within the context of the entire act, rather than in isolation, when construing the statute. *Smith,* at 404. In addition, words are given their plain meaning and this court may also look beyond the statute's language to the titles and headings of the statute. *Id.* Furthermore, we may look to subsequent enactments of legislation. *Highway Comm'n.,* at 325. It is a fundamental rule of statutory construction that "when the legislature enacts a statutory amendment to a prior statute, a presumption arises that the legislature intended to change the law unless it clearly appears that the amendment was made only to express the original intention of the legislature more clearly." *Jones v. State* (1983), Ind.App., 457 N.E.2d 231, 234; *See Highway Comm'n.,* at 325. However, there is also a strict presumption that a statute is constitutional which continues until it is clearly shown to be otherwise. *Wallman v. State* (1981), Ind.App., 419 N.E.2d 1346, 1348; *Tapp,* at 300. Moreover, it cannot be presumed that a legislature expects their enactment to be applied in an illogical or absurd manner, inconsistent with its under-

lying policies and goals. *Highway Comm'n.*, at 324; *Frost*, at 461.

■ Of course, a penal statute, such as the one involved here, must be strictly construed against the state. *Smith*, at 406; *Wallman*, at 1348. However, such statutes must not be construed so narrowly as to exclude cases fairly covered thereby. *Smith*, at 406; *Wallman*, at 1348. Instead, "the requirement that a penal statute be narrowly construed must be balanced against the presumption in favor of the statute's constitutionality." *Wallman*, at 1348; *Tapp*, at 301.

■ Keeping all of these rules in mind, we find that the Indiana legislature intended to include a corporation within its statutory definition of an enterprise. Aside from the term "corporation," the Indiana racketeering statute essentially follows the federal law. There is a lack of Indiana case law or legislative history in this area. However, as previously cited federal cases demonstrate, Congress intended RICO to hinder the influence of criminal activities within interstate business. *See generally*, Blakey, *The RICO Civil Fraud Action in Context: Reflections on Bennett v. Berg*, 58 *Notre Dame Law.* 237 (1982). To that end, Congress and the courts have given RICO a broad interpretation as evidenced by its application to both legitimate and illegitimate enterprises as well as its non-exclusive definitions of what constitutes an "enterprise" or "corporation."

It must be inferred that the Indiana legislature, in substantially adopting RICO, intended their legislation to have broad scope in eliminating criminal influence and racketeering from intrastate business. By logical extension, it must be inferred that the Indiana legislature intended the statute to apply to all business entities, including corporations. While the statute under which Alvers was charged lacked this specific term, we find that the presumption in favor of constitutionality outweighs an overly narrow reading of the statute. With the underlying goals and policies of the statute in mind, any other interpretation would render Indiana's anti-racketeering statute illogical and absurd—something the Indiana legislature did not intend. In addition, clause (2) of the section defining an enterprise in Ind.Code 35–45–6–1 states that an enterprise also means a "union, association, or group, whether a legal entity or merely associated in fact." This catch-all clause, present in the statute since its enactment, would include a corporation.[5] Hence, Ind.Code sec. 35–45–6–1 included a corporation within its definition of an "enterprise" even before the emergency amendment adding the term "corporation." We find, therefore, that the amendment to Indiana's racketeering statute merely served to clarify the statute's meaning. Consequently, the trial court did not err in permitting the jury to determine that Alvers Jewelers, Inc. was an "enterprise" as defined in Ind.Code sec. 35–45–6–1.

*Issue Three*

■ Alvers also argues that the trial court erred in permitting Delores Sailer (Sailer) and Katherine Sprague (Sprague) to testify as to prior acts allegedly committed by Alvers. Usually, evidence of criminal acts other than those charged is inadmissible as proof of a defendant's guilt. However, such evidence may be admitted to show intent, motive, purpose, identification, or common scheme or plan. *Mason v. State* (1984), Ind., 467 N.E.2d 737, 739; *Hare v. State* (1984), Ind., 467 N.E.2d 7, 18;

---

5. A corporation, as defined in *Black's Law Dictionary* 307 (5th ed. 1979), is:

"An artificial person or legal entity created by or under the authority of the laws of a state or nation, composed, in some rare instances, of a single person and his successors, being the incumbents of a particular office, but ordinarily consisting of an association of numerous individuals. Such entity subsists as a body politic under a special denomination, which is regarded in law as having a personality and existence distinct from that of its several members, and which is, by the same authority, vested with the capacity of continuous succession, irrespective of changes in its membership, either in perpetuity or for a limited term of years, and of acting as a unit or single individual in matters relating to the common purpose of the association, within the scope of the powers and authorities conferred upon such bodies by law."

*Hill v. State* (1983), Ind., 445 N.E.2d 994, 995; *Hossman v. State* (1985), Ind.App., 482 N.E.2d 1150, 1157 (transfer pending). Acts committed both before and after the crime charged may be used to show common scheme or plan. *Mason,* at 739; *Hossman,* at 1157. In addition, a crime for which the defendant has been acquitted is admissible to show these acts. *Hare,* at 18. "By showing common scheme or plan, the admission of the other crimes committed by the defendant are supportive of identification, intent or state of mind of the defendant." *Mason,* at 739.

█ Sailer and Sprague had nearly identical experiences with Alvers when they took jewelry to him to be repaired. Both women instructed Alvers to re-set the diamonds in their respective jewelry. Subsequently, during appraisal by other jewelers, each woman discovered that her diamond had been replaced by a cubic zirconia. Alvers told both women, upon being confronted, that the switch had been made by a prior employee and that Alvers would make the transaction "good." The indictment, *see* note 4, contains four specific instances where diamonds, entrusted to Alvers care, were later discovered to be cubic zirconias. The testimony of Sprague and Sailer demonstrated a common scheme or plan on the part of Alvers. As such, this testimony fell within the exception to the rule prohibiting the admission of evidence of other bad acts. Therefore, the trial court did not err in admitting this testimony into evidence.

*Issue Four*

█ Finally, Alvers argues that the trial court erred in refusing to give defendant's tendered instruction No. 5 and in giving instruction No. 15. Instruction No. 5, as tendered by Alvers, stated: "You are instructed that at the time the acts alleged in the indictment purportedly occurred a corporation was not an enterprise under the statute with which the defendant is here charged." Record at 1009. Instruction No. 15, given by the trial court stated: "At the time of the alleged offense, enterprise was defined by statute as follows: 1. Sole proprietorship, partnership, business

trust, or governmental entity. 2. Union, association, or group, whether a legal entity or merely associated in fact." Record at 1015. In determining whether error resulted from a trial court's refusal to give a tendered instruction, we consider three issues: (1) whether the tendered instruction correctly states the law, (2) whether the record supports the instruction, and (3) whether the substance of the instruction was covered by other instructions the court gave. *Smith v. State* (1980), Ind.App., 403 N.E.2d 869, 874, *trans. denied.* The instruction given by the trial court was verbatim from Ind.Code sec. 35-45-6-1 as it existed at the time of Alvers' alleged offenses. Conversely, Alvers' tendered instruction No. 5 would have precluded the jury from addressing the real issue of this case. In light of our decision today that a corporation was an "enterprise" under the original definition of that term, Alvers' instruction was contrary to law and therefore properly refused. In addition, this area was properly covered by instruction No. 15 and the record does not support instruction No. 5. Therefore, the trial court did not err in refusing Alvers' tendered instruction and giving instruction No. 15.

We therefore affirm the judgment of the trial court.

ROBERTSON, P.J., and NEAL, J., concur.