Charles **KOGER**, et al.,
**Defendant-Appellant,**

v.

**STATE** of Indiana, **Plaintiff-Appellee.**

No. 18A02–8704–CR–150.

Court of Appeals of Indiana,
First District.

Oct. 14, 1987.

---

Darrel K. Peckinpaugh, Muncie, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Charles Koger appeals his conviction for Corrupt Business Influence, a class C felony. We affirm.

## FACTS

From January through October of 1984, Rodney Collins and others engaged in stealing and reselling agricultural chemicals. Collins directed the others to burglarize chemical plants, stores, and warehouses and steal the chemicals. After taking delivery of the chemicals, Collins would sell them to another person. Collins paid the others from his proceeds of the sales.

On April 22, 1984, Boyd Wright picked up Charles Koger at Koger's house in Muncie. Wright asked Koger to break into an agricultural supply outlet in Ohio to steal chemicals. Koger consented. Koger was a last minute replacement since Wright had planned on taking another person. Koger and Wright then picked up Oliver Burke. The three men went to Hardin County in Ohio and burglarized the farm supply outlet. The three loaded their rented truck with agricultural chemicals valued at about $35,000. Wright, Koger, and Burke returned to Muncie where Collins took the truck and sold the chemicals to another person. Although the evidence is unclear, Collins returned to Wright's house that same day and paid Wright $1,200. Wright then paid $400 each to Koger and Burke.

Koger was indicted along with eleven (11) other defendants for violating Indiana's Racketeer Influenced and Corrupt Organization (RICO) statute, Indiana Code section 35–45–6–2. The pertinent provisions of the indictment are as follows:

"The Grand Jury of the County of Delaware for the 1985 Term, being duly sworn, empaneled and charged in the name and upon the authority of the State of Indiana, upon their oath charge and present that Rodney E. Collins, Boyd A. Wright (a.k.a. Anthony Boyd Wright), Paul Steven Reeder, Eugene Oliver Burke, *Charles Koger*, Michael Koger, Joseph Reeder, Charles Plumb, Curtis Hicks, Bobby Garrett, Vince Garrett, and Jimmy Swingley from on or about January, 1984 to on or about October 1st, 1984, at and in the County of Delaware, State of Indiana, did knowingly associate with and participate in the activities of an enterprise, to-wit: a group of the said persons aforenamed, and unknown others, an association of persons in fact, for the purpose of planning and conspiracy to commit crimes and committing crimes including burglaries, thefts, and dealing in stolen property and drugs, to-wit: ...

"3. On or about April 22nd, 1984, the said Rodney Collins, Boyd Wright, Eugene Oliver Burke, *Charles Koger* and Jimmy Swingley, with intent to commit burglary, did conspire, each with the others, to burglarize Landmark Ag Supplies, a commercial business building, Hardin County, Ohio, and Boyd Wright, Eugene Oliver Burke, *Charles Koger*, and Jimmy Swingley did perform an overt act in

furtherance of said conspiracy, to-wit: the burglary of said business; ...

"10. That Rodney E. Collins, Boyd A. Wright (a.k.a Anthony Boyd Wright), Paul Steven Reeder, Eugene Oliver Burke, *Charles Koger*, Michael Koger, Joseph Reeder, Charles Plumb, Curtis Hicks, Bobby Garrett, Vince Garrett, and Jimmy Swingley from on or about January, 1984 to on or about October 1st, 1984, at and in the County of Delaware, State of Indiana, did conspire, each with the others, to exert unauthorized control over property of another, to-wit: fertilizer, prescription drugs, radios, and other property of the aforesaid businesses, with the intent to deprive the owners of the use and value thereof, and that said persons did perform an overt act in furtherance of said conspiracy by stealing said property during commission of said burglaries, by transporting said property to places within Delaware County, Indiana, and by transporting said property to other places and selling said property to persons unknown;

all while said persons were associated with the aforesaid enterprise, all of which is contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State of Indiana."

Record at 32–35 (emphasis added).

Koger was tried alone for the RICO violation. After the jury returned a guilty verdict, Koger was sentenced to three years. Koger now brings this appeal.

## ISSUES

1. Whether there is sufficient evidence to sustain Koger's conviction for violating Indiana's RICO statute.

2. Whether the trial court erred in allowing State witnesses to testify when the State failed to disclose them pursuant to a discovery order.

3. Whether the trial court erred in refusing two of the defendant's tendered jury instructions.

## DISCUSSION AND DECISION

*Issue One*

Koger argues that the State failed to prove two (2) or more incidents of racketeering activity to support the RICO conviction. He argues that he participated in only one criminal event, *i.e.*, by going to Ohio, committing a burglary, stealing chemicals, returning to Muncie, and being paid $400. The State counters this argument by citing *United States v. Starnes* (7th Cir.1981), 644 F.2d 673, *cert. denied*, 454 U.S. 826, 102 S.Ct. 116, 70 L.Ed.2d 101.

In *Starnes*, the defendants were charged with violating the federal RICO provisions by conspiring to engage in a pattern of racketeering. Under the federal statute, a "pattern of racketeering activity" is defined as "at least two acts of racketeering activity...." 18 U.S.C. § 1961(5). In that case, the defendants conspired to set fire to a building and defraud the insurance company by accepting the insurance proceeds. To accomplish the task, the defendants traveled from Indiana to Illinois, set the building afire in Illinois to defraud the insurer, and then used the mails to collect from the insurance company. On appeal, the defendants argued that they could not be convicted under the federal RICO statute since the offense charged involved only a single instance of arson. The Seventh Circuit disagreed:

"Acts of racketeering under RICO include arsons punishable under state law by imprisonment for more than one year, 18 U.S.C. § 1961(1)(A), and crimes indictable under federal mail fraud laws or federal laws that prohibit interstate travel with intent to commit arson, 18 U.S.C. § 1961(1)(B). Each of those acts is a separate instance of racketeering activity under RICO. When two or more of those acts are connected to each other in some logical manner so as to effect an unlawful end, a pattern of racketeering exists. 18 U.S.C. § 1961(5), 1962(d)....

"Defendants' argument that RICO cannot apply to a conspiracy to commit a single arson ignores the statutory scheme just described. While there may indeed have been a single scheme or ob-

jective of the conspiracy—the arson—it turned out that several acts of racketeering were contemplated to achieve that objective. Under RICO, the conspiratorial *objective* is a matter different than the *acts* contemplated by the conspirators." *Starnes*, at 677–78 (emphasis in original). The court concluded by saying, *"the fact that there is but one objective underlying the separate acts does not diminish the applicability of RICO to those acts." Id.* at 678 (emphasis added). For other cases applying this analysis, see *United States v. Neapolitan* (7th Cir.1986), 791 F.2d 489, 499 n. 5 ("the fact that the goal of the conspiracy is the ultimate commission of one criminal act does not preclude that objective from constituting a RICO violation where two predicated acts are required or actually agreed to as part of the conspiracy"), *cert. denied,* —— U.S. ——, 107 S.Ct. 422, 93 L.Ed.2d 372; *United States v. Pepe* (11th Cir.1984), 747 F.2d 632, 661; *United States v. Phillips* (5th Cir.1981), 664 F.2d 971, 1039, *cert. denied sub nom., Meinster v. United States,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354. Although we agree with the State that the *Starnes* analysis would apply under Indiana's RICO statute, especially since we liberally construe our RICO prohibitions, *see 4447 Corp. v. Goldsmith* (1987), Ind., 504 N.E.2d 559, 564, we first must address the difference between the federal RICO statute and our counterpart.

The State contends, and we agree, that Koger was convicted under Indiana Code section 35–45–6–2(a)(3). That provision states:

"Corrupt business influence—Penalty.—
(a) A person:

.        .        .        .        .

(3) Who is employed by or associated with an enterprise, and who knowingly or intentionally conducts or otherwise participates in the activities of that enterprise through a pattern of racketeering activity; commits corrupt business influence, a Class C felony."

**2.** For an analysis of what federal courts construe as a "pattern", see *Sedima, S.P.R.L. v. Imrex Co.* (1985), 473 U.S. 479, 495, 105 S.Ct.

Indiana Code section 35–45–6–1 defines "racketeering activity" as meaning "to commit, to attempt to commit, or to *conspire* to commit a violation, or aiding and abetting in a violation" of numerous statutory crimes, including theft and burglary. A "pattern of racketeering activity" is defined by Ind.Code § 35–45–6–1 as "engaging in at least two [2] incidents of racketeering activity that have the same or similar intent, result, accomplice, victim, or method of commission, or that are otherwise interrelated by distinguishing characteristics that are not isolated incidents...."

The federal RICO statute has a provision substantially similar to Ind.Code § 35–45–6–2(a)(3), the provision under which Koger was convicted. 18 U.S.C. § 1962(c) states:

"It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

Congress then defined "racketeering activity" as follows:

"As used in this chapter—

(1) 'racketeering activity' means (A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in narcotic or other dangerous drugs, which is chargeable under State law and punishable by imprisonment for more than one [1] year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: [hereinafter are listed numerous federal crimes]...."

18 U.S.C. § 1961(1). Congress defined a "pattern of racketeering activity" as requiring "at least two [2] acts of racketeering activity...." 18 U.S.C. § 1961(5).[2]

3275, 3285, 87 L.Ed.2d 346, 358–59 n. 14; and *Superior Oil Co. v. Fulmer* (8th Cir.1986), 785 F.2d 252, 255–258.

While Indiana's RICO provisions admittedly are patterned after the federal RICO statute, *see State v. Sappenfield* (1987), Ind.App., 505 N.E.2d 504, 505, *trans. denied*, our statute has a different effect when conspiracy is alleged. In the federal RICO statute, the paragraph which immediately succeeds 18 U.S.C. § 1962(c) (quoted above as being similar to the provision under which Koger was convicted) provides, "It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section." 18 U.S.C. § 1962(d).

The Seventh Circuit recently dealt with a case where a defendant was charged with violating § 1962(d). In *United States v. Neapolitan* (7th Cir.1986), 791 F.2d 489, *cert. denied*, —— U.S. ——, 107 S.Ct. 422, 93 L.Ed.2d 372, the court addressed the degree of relationship between the defendant and the predicate offenses which is sufficient to support a conviction for RICO conspiracy under § 1962(d). The Seventh Circuit prefaced its discussion by acknowledging, "The issues presented in the appeal cannot be easily resolved, and have caused a clear division among the circuit courts that have considered the issue." *Id.* at 494.

The *Neapolitan* court analyzed the divergent opinions of the other circuits. One line of cases, primarily from the First and Second Circuits, holds that a section 1962(d) conspiracy to violate section 1962(c) requires the State to prove an agreement to personally commit two predicate acts of racketeering. *Id.* at 494, 496–97. In analyzing those cases, the Seventh Circuit responded as follows:

"Requiring an agreement personally to commit two predicate acts would establish a new form of conspiring in contradistinction to section 1962(d)'s base in traditional conspiracy law. Under the defendants' theory section 1962(d) would require not only an agreement to join in the conspiracy's objective, a RICO violation, but also an agreement to personally commit the underlying offense through the commission of two predicate acts. This involves a degree of involvement in the affairs of the conspiracy that is not required in any other type of conspiracy,

where agreeing to a prescribed objective is sufficient."

*Neapolitan*, at 497–98 (footnote omitted). The court then noted that neither the statute nor its legislative history warranted a higher level of involvement in a conspiracy to violate RICO as opposed to a conspiracy to violate anything else. *Id.* at 498. The court concluded by rejecting this approach.

The Seventh Circuit in *Neapolitan* then analyzed and approved the opposing group of cases in the other circuits holding that the State need only show that the defendant agreed with his co-conspirators to operate an enterprise through the commission of two proscribed acts. *Id.* at 494–96. The court reasoned that the language of the statute did not explicitly require a personal agreement to commit two predicate offenses. *Id.* at 496. The Seventh Circuit then recognized that the legislative goal of expanding the scope of remedies available to combat organized crime would be frustrated by requiring the government to prove an agreement personally to commit two acts. *Id.* Finally, the court explained that RICO was enacted in the setting of traditional conspiracy law.

"Under classic conspiracy law, agreeing to the commission of the conspiracy's illegitimate objectives constitutes the crime. The goal of a RICO conspiracy as defined by section 1962(d) is a violation of RICO. *The defendant need only agree to a single violation of RICO;* he need not agree personally to violate the statute."

*Id.* (emphasis added).

We are of the opinion that the analysis embraced by the Seventh Circuit in *Neapolitan* would apply to Koger had he been charged with and convicted of conspiracy to violate Ind.Code § 35–45–6–2(a)(3). However, he was not charged in this manner. Therefore, *Neapolitan* is inapplicable. Our RICO statute does not contain a conspiracy section as is embodied in 18 U.S.C. § 1962(d) which states, once again, "It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of

**1256**

this section." Indiana's RICO statute discusses only conspiracy in the definition of "racketeering activity" embodied in Ind. Code § 35–45–6–1. When this definition of "racketeering activity" is correlated with the statutory definition of "pattern of racketeering activity" which is also embodied in I.C. 35–45–6–1, it is clear that, under our statute, a conspiracy can be used as only one of the two predicate offenses required for a RICO violation. Stated differently, in contrast to the federal statute, there is no such thing as an Indiana RICO conspiracy. For a defendant to be properly charged with an Indiana RICO conspiracy, the indictment would have to be prepared pursuant to our general conspiracy statute, Indiana Code section 35–41–5–2.

■ In the present case, Koger was not charged in this manner. Therefore, the indictment cannot be construed as charging him with a RICO conspiracy. Koger instead was charged with a substantive violation of RICO through "two (2) incidents of racketeering activity". The two incidents specifically charged were: (1) conspiracy to burglarize the Ohio agricultural supply outlet and (2) conspiracy to commit theft by exerting unauthorized control over property of another with the intent to deprive the owner of the use and value thereof. However, the record does not indicate and the jury could not reasonably infer that Koger made two separate agreements. Koger simply made one agreement to burglarize the store and fence the chemicals. It is axiomatic that a "single agreement to commit several unlawful acts cannot be punished by multiple convictions under a general conspiracy statute. *Braverman v. United States* (1942), 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23; *Ridgeway v. State* (1981), Ind.App., 422 N.E.2d 410." *Perkins v. State* (1985), Ind., 483 N.E.2d 1379, 1386. Since Koger made only one agreement, that agreement, or conspiracy, can only serve as one incident of racketeering. Unless there is at least one other incident, Koger's conviction must be reversed. *See Hewell v. State* (1984), Ind.App., 471 N.E.2d 1235, 1239 (two incidents required), *trans. denied.*

■ We hold that in addition to Koger's one conspiracy, there was one other incident of racketeering to support his RICO conviction. The indictment in paragraph 10 charged Koger with conspiracy to commit theft. The overt act which the State alleged was in furtherance of the conspiracy was the theft itself. At trial, the State presented uncontradicted evidence that Koger and his two accomplices burglarized the supply outlet in Ohio, stole about $35,000 worth of farm chemicals, took the chemicals back to Muncie, and turned them over to Rodney Collins who fenced them. Koger was paid $400 for his role in the scheme. Koger never disputed any of the State's evidence. The indictment plainly informed him that the State would prove that he committed theft since the State alleged in the indictment that the overt act in furtherance of the conspiracy was the completed theft itself. Thus, although Koger was not charged with theft, the indictment clearly indicated that the State would prove that he exerted unauthorized control of property of another with the intent to deprive the owner of the use or value thereof. *See* Ind.Code § 35–43–4–2(a). In *Neapolitan*, the Seventh Circuit stated that "it is well-established that the government cannot attempt to prove crimes at trial that were not identified in the indictment." *Id.* at 500; *see also United States v. Elliott* (5th Cir.1978), 571 F.2d 880, 911, *cert. denied sub nom., Hawkins v. United States*, 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed. 2d 344. Here, theft was identified in Koger's indictment. In a RICO indictment, a defendant is not charged with two or more predicate offenses; instead, he is charged with violating RICO. Thus, Koger's indictment was sufficient. *See Elliott*, at 911. Furthermore, Koger never challenged the specificity of the indictment and never objected to the evidence at trial concerning the theft.

■ We note that another incident of racketeering activity was identified in the indictment. Paragraph 3 of the indictment charged Koger with conspiracy to commit burglary. The indictment alleged that the overt act in furtherance of the conspiracy

was the completed burglary in Hardin County, Ohio. At trial, the State presented uncontradicted evidence that Koger and his accomplices did burglarize the Ohio farm chemical supply store. However, this burglary cannot be construed as an incident of "racketeering activity" within the statutory framework of Indiana's RICO prohibitions. Ind.Code § 35–45–6–1 defines "racketeering activity" as violations of specifically enumerated Indiana penal provisions. As relevant here, one of the statutorily defined racketeering activities is "burglary (IC 35–43–2–1)." The specific reference to Ind. Code § 35–43–2–1 renders it impossible to consider the Ohio burglary as one of two incidents of racketeering activity necessary for an Indiana RICO conviction. I.C. 35–43–2–1 prohibits burglaries committed in Indiana; it does not prohibit burglaries committed outside our state's boundaries. Since the Ohio burglary was not a violation of I.C. 35–43–2–1, it cannot be used as an incident of racketeering activity to support a RICO conviction.

■ Conversely, the theft identified in paragraph 10 of Koger's indictment did fall within Indiana's penal provisions. Although it is true that a theft occurred in Ohio when Koger and the others stole the chemicals, a theft also occurred when they transported the stolen goods back to Indiana. Ind.Code § 35–43–4–2(a) provides, "A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a class D felony." Koger's possession of the chemicals in Indiana violated I.C. 35–43–4–2(a), regardless of whether he also committed theft in Ohio by stealing the same subject matter. Therefore, the theft which occurred in Indiana can be used as one of the two incidents of racketeering activity. Consequently, the two incidents of racketeering activity to support Koger's conviction are theft and a single conspiracy to commit both burglary and theft. *See Starnes, supra.*

We acknowledge that Koger is not a "big fish" or "ring leader". However, the federal courts consistently have applied the federal RICO prohibitions to defendants who are similar to Koger. *E.g., Neapolitan,* at 498; *Elliott,* at 903 ("the RICO net is woven tightly to trap even the smallest fish, those peripherally involved with the enterprise"). The federal courts liberally construe the federal statute and we similarly interpret Indiana's RICO statute. *See, 4447 Corp.,* at 564. Therefore, we approve of the federal courts' analysis on the breadth of RICO's coverage.

*Issue Two*

■ Koger argues that the trial court erred by denying his motion to exclude three State witnesses from testifying due to discovery violations. The trial court had ordered the State to provide a list of witnesses and their criminal records to Koger's attorney by July 12, 1985. The State listed only Oliver Burke as a witness. It did not list Rodney Collins, Boyd Wright, or Mr. Long, the manager of the Ohio farm supply outlet. Prior to the State's case-in-chief, Koger's attorney moved to exclude their testimony. The trial court denied this motion, but granted Koger's attorney time to talk with the three prior to their testimony.

On appeal of a trial court's ruling on discovery violations, we will not reverse absent clear error and resulting prejudice. *Armstrong v. State* (1986), Ind., 499 N.E. 2d 189, 191. Our supreme court recently stated:

> "A continuance is the normal remedy when the State has violated an order for discovery, although a broad range of sanctions are [sic] within the trial court's discretion. The trial court's ruling will not be reversed absent clear error. The trial judge is in the best position to determine if any harm has been sustained by noncompliance with an order for discovery. He, likewise, is in the best position to determine what judicial acts may alleviate or eliminate the damage.' *Rock v. State* (1981), Ind., 426 N.E.2d 1320."

*Campbell v. State* (1986), Ind., 500 N.E.2d 174, 182. Thus, the trial court's choice of sanctions is entirely discretionary.

We hold that the trial court did not exceed its discretionary authority. On appeal, Koger does not explain how he was prejudiced, if at all, by the State's failure to list the witnesses. Koger also does not allege that he was surprised by the State's intention to call the witnesses. He furthermore does not claim that the time given to talk with the witnesses was inadequate. Also, Koger does not claim that he was unaware of the criminal records of Collins and Wright. Since Koger has failed to show any prejudice whatsoever, we will not overturn the trial court's denial of his motion to exclude the testimony. The trial court was in the best position to decide upon the appropriate relief and we will defer to its judgment.

*Issue Three*

Koger alleges that the trial court erred by denying two of his tendered jury instructions. A proposed instruction must be a correct statement of the law, supported by the evidence, and not covered by any other instruction. *Fowler v. State* (1985), Ind., 483 N.E.2d 739, 744; *Fankboner v. Schubert* (1982), Ind.App., 431 N.E.2d 856, 858, *trans. denied.*

■ One of Koger's tendered instructions dealt with multiple convictions. *See* Indiana Code section 35–41–5–3. However, we fail to see how it related in any way to the evidence in this case. Therefore, the trial court properly refused it.

■ Koger's other instruction related to conspiracy. It stated that one agreement to commit several crimes cannot constitute more than one conspiracy. Although this instruction was a correct statement of the law, we have previously discussed in Issue One that there indeed was only one conspiracy to commit several crimes. In addition to the conspiracy as constituting one incident of racketeering activity, the State also proved another incident, *i.e.*, theft. Therefore, the trial court's refusal of this instruction in no way harmed Koger.

Judgment affirmed.

NEAL, J., concurs.

SULLIVAN, J., dissents with separate opinion.

SULLIVAN, Judge, dissenting.

The Indiana RICO statute was not intended nor was it drafted to include the isolated activity of Charles Koger. The words of the statute and the positioning of those words so indicate.

Although the majority recognizes that *United States v. Neapolitan* (1986) 7th Cir., 791 F.2d 489, *cert. denied* —— U.S. ——, 107 S.Ct. 422, 93 L.Ed.2d 372, focuses upon conspiracy as an enhancing factor of a pattern of racketeering activity, the underlying reasoning of *Neapolitan* is utilized if not adopted. *Neapolitan* held that the federal RICO statute is a conspiracy statute and that commission of two predicate acts pursuant to a conspiracy constituted the requisite pattern of racketeering activity. In other words, two closely related criminal acts during the same single activity constitute a pattern of racketeering in the context of the overall conspiracy. A more important and dramatic distinction, however, is that the *Neapolitan* court stated that the federal RICO statute was entitled to a broad reading and a liberal construction, so as to effectuate its purpose— the stamping out of organized crime and racketeering. Not only is this reasoning fraught with precedential danger as to federal criminal statutes, it is contrary to the established law of this State. As did the court in *Alvers v. State* (1986) 1st Dist.Ind. App., 489 N.E.2d 83, *trans. denied,* we should note that the Indiana RICO statute is a penal statute and must be strictly construed against the state. *Id.* at 89.

To the extent that *Neapolitan* justifies its result upon the proposition that it is remedial rather than substantive, it is also inapplicable. *Neapolitan* views the RICO statute as a provision for enhancement of the penalty to be imposed for separately prohibited criminal conduct. Koger was convicted of but a single crime, violation of the RICO statute. He was not convicted of conspiracy, burglary or theft. His three year sentence for RICO involvement was

therefore not an enhancement. In Indiana, a RICO violation is a crime separate and distinct from those criminal acts which might disclose a conspiratorial pattern of racketeering activity. In contradiction to the federal statute, which emphasizes the conspiratorial aspects, the Indiana statute purports to isolate the racketeering pattern and categorize it as a separate crime. Accordingly I do not consider *Neapolitan* as cognizable authority in our case, either as to its reasoning, analysis or result.

As noted by our First District in *Alvers v. State, supra,* 489 N.E.2d 83:

"Indispensable to ascertaining the legislature's intent is a consideration of the goals sought to be achieved and the reasons and policy underlying a statute.... Consequently, it is necessary to view a statute within the context of the entire act, rather than in isolation, when construing the statute.... In addition, words are given their plain meaning and this court may also look beyond the statute's language to the titles and headings of the statute." (Citations omitted) 489 N.E.2d at 88.

The Act's title carries with it an indication of its intended scope: "Racketeer Influenced and Corrupt Organizations." This designated target of the legislation would not seem to include participation by an individual on a single occasion even though that occasion was a part of an overall elaborate pattern of activity by other persons. The words used to define the elements of the crime also seem to not contemplate a defendant such as Koger. Indiana Code 35–45–6–2(a)(3) (Burns Code Ed.Repl.1985) as here involved punishes a defendant only if his participation itself reflects a pattern of racketeering activity. It is not sufficient if he participates in a single incident of a pattern of racketeering activity engaged in by the enterprise, but not otherwise involving the defendant.[1]

There is no doubt that the criminal enterprise involved here was a sophisticated and professional burglary ring which operated over a wide area and over a lengthy period. There is also no doubt that the operation was one of racketeering and that the extensive acts alleged in this case were within the purview of the RICO statute. It is significant, however, that with respect to Koger, but a single incident is applicable. The indictment against the multiple defendants in this enterprise charged conspiracy to commit six separate burglaries in six separate locations at six separate times and alleged that three of them had been consummated. Koger's complicity concerned only a single such incident—the burglary and theft in Hardin, Ohio. Notwithstanding *United States v. Neapolitan, supra,* 791 F.2d 489, and other federal cases in my view Koger does not stand in the same position as the other principals in the enterprise.

The majority adopts the view that the pattern of racketeering activity must only be connected with the enterprise. That may be true in the context of the federal statute which seeks to punish the conspiracy aspect of furthering the racketeering activities of the enterprise. It is not true with respect to the Indiana statute.

Our statute requires the pattern of racketeering activity be associated with the conduct of the participant defendant. To convict Koger for participating in two incidents of racketeering activity for his agreement to travel to Ohio to burglarize Landmark Ag Supplies and steal chemicals is to stretch application of the statute beyond its reasonable intent.

Two youths without prior or subsequent criminal conduct, who break and enter a storage shed and remove a bicycle with intent to sell it to a known fence, are burglars and thieves but they are not professional racketeers.

Koger knowingly and willingly participated in an activity of the racketeering enterprise. He went to a great deal of trouble to do so, traveling to Ohio in order to consummate the burglary and theft. He was hired and paid to commit the burglary

---

1. It is acknowledged that some federal cases construe the scope of the federal RICO web to include single isolated criminal acts which are known by the actor to constitute a part of an overall pattern of racketeering.

and theft. He is not a naive youth who stole a bicycle and pawned it with a known receiver of stolen property. Nevertheless, he was not shown to be a professional burglar or thief. He was not shown to be a racketeer. But more importantly, he was not shown to have engaged in a pattern of racketeering activity.

I would reverse the judgment.

