Ken O. **RIDGEWAY**, Appellant
(Defendant Below),

v.

**STATE of Indiana**, Appellee
(Plaintiff Below).

No. 2–1079A319.

Court of Appeals of Indiana,
Second District.

June 30, 1981.
Rehearing Denied August 18, 1981.

James R. Fleming, Kokomo, for appellant.

Linley E. Pearson, Atty. Gen. of Indiana, Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for appellee.

SHIELDS, Judge.

Ken O. Ridgeway appeals from a jury finding of guilty on three counts of conspiracy to sell a Schedule II substance. He asserts four errors:

    I.  Multiple sentencing for the same offense;

   II.  Insufficiency of the evidence;

 III.  Admission of evidence of activity at locations other than that specified in his Notice of Alibi;

 IV.  Failure to require State to file more specific response to Notice of Alibi.

Ridgeway was a practicing physician in Howard County. In November of 1976 he began a relationship with Kathy McQuiston, his office assistant, which ended in August of 1977 about the time McQuiston was terminated from her employment. Ridgeway continued to see McQuiston occasionally, cosigned on her loan for a three or four thousand dollar trailer, and gave her other financial assistance.

In November of 1977 McQuiston requested Ridgeway for help with her trailer payments. He assisted with one payment but upon her next request claimed he did not

have the money. At that point McQuiston and her boyfriend, Kent Huskins, decided to approach Ridgeway about writing quaalude (a Schedule II drug) prescriptions which could be "cashed in" at a pharmacy and the quaalude sold on the street. From November 1977 to January 1978 Ridgeway gave McQuiston prescriptions he wrote for quaalude which were all made out for her, Kent Huskins, or Larry Reed. Sometime prior to January 10, 1978 McQuiston told Ridgeway she was cashing these prescriptions and selling the drug.

January 10, 1978, at McQuiston's request, Ridgeway met with her and Huskins at her trailer. Ridgeway gave McQuiston three prescriptions written by him for sixty 300 mg. quaalude tablets. The prescriptions were written for: 1) Jan Moles, McQuiston's mother-in-law, dated 1–10–77 (Count I); 2) Kent Huskins, dated 1–10–77 (Count II); Larry Reed, dated 1–11–77 (Count IV). Ridgeway advised McQuiston to have the prescriptions filled at different stores and asked her what she would do if caught on the street with the pills.

On January 11, 1978 Ridgeway gave McQuiston a prescription for quaalude dated 1–11–77 made out to her. This prescription is the basis for Count III.

Approximately January 14, 1978 McQuiston phoned Ridgeway. He met her with more prescriptions for quaaludes made out in the name of McQuiston's friends dated January 16. Ridgeway advised Kathy not to "cash them" until the sixteenth. He also asked McQuiston if she could sell a lot of pills. McQuiston stated she could and at a later date they met and Ridgeway agreed to order a thousand (1,000) tablets for McQuiston to sell, with half the proceeds to be retained by her and the other half given to Ridgeway. Ridgeway placed the order but later cancelled it.

February 7, 1978 Ridgeway was charged with twelve counts of conspiracy to commit a felony, to wit: Delivery of a controlled substance, a Class B felony, later amended to seven counts. He filed a notice of alibi on all counts, alleging he was at his home, among other places, on January 10, 11, and 16 of 1978. The State's answer to the alibi notice placed all the events in Howard County and specified the time for Count I as January 10, 1978 between 12 A.M. and 11:59 P.M.; and Counts III and IV as January 11, 1978 between the hours of 12 A.M. and 11:59 P.M. Ridgeway filed a motion in limine to suppress evidence placing him at any place other than that stated in his alibi notice. After hearing, the motion was denied.

Trial was held and the jury returned a guilty verdict on Counts I,[1] III,[2] and IV.[3]

1. COUNT I: On or about the 10th day of January, 1978, in Howard County, State of Indiana, Ken O. Ridgeway and Kathy McQuiston did knowingly and intentionally agree with each other to commit a felony, to-wit: to knowingly or intentionally deliver a substance classified in Schedule II of the Indiana Uniform Controlled Substances Act, to-wit: methaqualone; in that Ken O. Ridgeway did knowingly and intentionally write a prescription for one Jan Moles for sixty (60) methaqualone tablets and did deliver said prescription to Kathy McQuiston, with the knowledge that said Kathy McQuiston planned to obtain said methaqualone tablets herself and to sell said methaqualone tablets to other individuals then and there being Affiant is informed and believes, contrary to the form of statutes, to-wit: I.C. 35–41–5–2 in such cases made and provided, and against the peace and dignity of the State of Indiana.

2. COUNT III: On or about the 11th day of January, 1978, in Howard County, State of Indiana, Ken O. Ridgeway and Kathy McQuiston

did knowingly and intentionally agree with each other to commit a felony, to-wit: to knowingly or intentionally deliver a substance classified in Schedule II of the Indiana Uniform Controlled Substances Act, to-wit: methaqualone; in that Ken O. Ridgeway did knowingly and intentionally write a prescription for Kathy McQuiston for sixty (60) methaqualone tablets and did deliver said prescription to Kathy McQuiston with the knowledge that said Kathy McQuiston did not plan to use said prescription herself, but rather to sell said methaqualone tablets to other individuals then and there being Affiant is informed and believes, contrary to the form of the statutes, to-wit: I.C. 35–41–5–2 in such cases made and provided, and against the peace and dignity of the State of Indiana.

3. COUNT IV: On or about the 11th day of January, 1978, in Howard County, State of Indiana, Ken O. Ridgeway and Kathy McQuiston did knowingly and intentionally agree with

## I DOUBLE JEOPARDY CHALLENGE

The foundational question raised by this appeal is whether Ridgeway's multiple convictions are contrary to the protection against multiple punishment for the same offense guaranteed by the Double Jeopardy clause. Without admitting any offense, Ridgeway contends the evidence would support "only one conspiracy, one agreement, and one crime." This double jeopardy challenge turns on whether all the alleged criminal conduct was pursuant to one overall agreement or whether each offense was the result of a separate and independent conspiratorial agreement. The issue is whether several offenses are the multiple objects of a single agreement and consequently a single conspiracy, the separate object of several agreements and consequently multiple conspiracies, or some combination thereof.

■ Whether there is one conspiracy or several is a question for the jury. *United States v. Morrow,* (5th Cir. 1976) 537 F.2d 120; *United States v. Varelli,* (7th Cir. 1969) 407 F.2d 735; *Cole v. State,* (1975) 167 Ind.App. 310, 338 N.E.2d 651. In *Cole,* decided under the prior criminal code, the court held it was for the trier of fact to resolve "whether the defendants' acts constituted a single conspiracy to commit two burglaries or whether the acts constituted two separate conspiracies to commit separate burglaries." *Cole* at 314, 338 N.E.2d at 654. Unfortunately, the *Cole* court did not discuss what considerations are relevant to the determination of the factual question.

It is important to remember the gravamen of the offense of conspiracy is the agreement. The purpose of the offense is to protect against the special danger incidental to group activity.

■ The fact that a single agreement will support but a single offense of general conspiracy is well accepted.

"For when a single agreement to commit one or more substantive crimes is evidenced by an overt act, as the statute requires, the precise nature and extent of the conspiracy must be determined by reference to the agreement which embraces and defines its objects. Whether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes. The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one."

*Braverman v. United States,* (1942) 317 U.S. 49, 53, 63 S.Ct. 99, 101, 87 L.Ed. 23.[4]

"... The test is whether there was one overall agreement among the various parties to perform various functions in order to carry out the objectives of the conspiracy. If so, there is but a single conspiracy." (Citation omitted.)

*People v. Skelton,* (1980) 109 Cal.App.3d 691, 167 Cal.Rptr. 636, 651. The danger is in confusing separate acts at separate times with separate conspiracies.

"Almost any venture, criminal or legitimate, is analyzable into a series of bits, each of which, in turn, is characterizable as an independent plan or goal. The

each other to commit a felony, to-wit: to knowingly or intentionally deliver a substance classified in Schedule II of the Indiana Uniform Controlled Substances Act, to-wit: methaqualone; in that Ken O. Ridgeway did knowingly and intentionally write a prescription for Larry Reed for sixty (60) methaqualone tablets and did deliver said prescription to Kathy McQuiston with the knowledge that said Kathy McQuiston did not plan to use said prescription herself, but rather to sell said methaqualone tablets to other individuals then and there being Affiant is informed and believes, contrary to the form of the statutes, to-wit: I.C. 35–41–5–2 in such cases made and provided, and

against the peace and dignity of the State of Indiana.

**4.** An aid to understanding the *Braverman* doctrine is to recognize its kinship with the single larceny doctrine. *See Holt v. State,* (1978) Ind. App., 383 N.E.2d 467.

The import of the *Braverman* holding has been eroded by federal decisions affirming multiple conspiracy convictions where the convictions were for the violation of separate and multiple specific conspiracy statutes. *United States v. Rodriquez,* (5th Cir. 1980) 612 F.2d 906; *United States v. Marotta,* (9th Cir. 1975) 518 F.2d 681.

standard for determining the existence of a single conspiracy, however,

> '... is whether there was one overall agreement among the various parties to perform various functions in order to carry out the objectives of the conspiracy ....'
>
> *United States v. Hobson,* 519 F.2d 765, 775 (9th Cir.), *cert. denied,* 423 U.S. 931, 96 S.Ct. 283, 46 L.Ed. 261 (1975), *quoting United States v. Ellsworth,* 481 F.2d 864, 869 (9th Cir.), *cert. denied,* 414 U.S. 1041, 94 S.Ct. 544, 38 L.Ed.2d 332 (1973)."

*United States v. Kearney,* (9th Cir. 1977) 560 F.2d 1358; *cert. denied,* (1977) 434 U.S. 971, 98 S.Ct. 522, 54 L.Ed.2d 460.

■ A review of federal cases in the area reveals several factors may be considered in determining whether there is one agreement or several. These factors include: 1) "the character of the property and the nature of the criminal scheme," *United States v. Bass,* (5th Cir. 1977) 562 F.2d 967; 2) overlapping participants, *United States v. Perez,* (5th Cir. 1973) 489 F.2d 51; 3) time period involved, *United States v. D'Antonio,* (7th Cir. 1966) 362 F.2d 151; and 4) the quality, frequency, and duration of each conspirator's transactions, *United States v. Zemek,* (9th Cir. 1980) 634 F.2d 1159.

■ The evidence introduced at trial showed McQuiston contacted Ridgeway on several occasions over a period of several days to request prescriptions made out to her, her friends, and relatives. These facts are sufficient to support an inference by the jury that each meeting between Ridgeway and McQuiston resulted in a new agreement to act with a single purpose limited to that particular act. There is no evidence to support a reasonable inference that more than one conspiracy was formed (an agreement coupled with a purpose) [5] at any single meeting. The evidence reveals the Count IV prescription was given to McQuiston on January 10, 1978 at the same time as the prescription described in Count I. Therefore, Ridgeway's conviction on Count IV must be reversed.

---

5. Followed, of course, by an overt act in furtherance of the agreement.

## II  SUFFICIENCY OF THE EVIDENCE

Ridgeway contends the evidence is insufficient to prove Count I which alleges a conspiracy between McQuiston and himself on January 10, 1978. Claiming the uncontradicted evidence shows he had no contact with McQuiston on January 11, 1978, Ridgeway argues the evidence is insufficient to prove Count III which alleges a separate conspiracy on January 11, 1978.

When reviewing the sufficiency of the evidence, we consider the evidence most favorable to the verdict, together with all reasonable inferences which may be drawn therefrom, and if there is substantial evidence of probative value to support each element of the offense beyond a reasonable doubt, the judgment will be affirmed. *Weaver v. State,* (1980) Ind.App., 404 N.E.2d 1180.

The statute defining the offense of conspiracy reads, in pertinent part, as follows:

> "Sec. 2.  (a) A person conspires to commit a felony when, with intent to commit the felony, he agrees with another person to commit the felony. A conspiracy to commit a felony is a felony of the same class as the underlying felony. However, a conspiracy to commit murder is a Class A felony.
>
> (b) The state must allege and prove that either the person or the person with whom he agreed performed an overt act in furtherance of the agreement."

I.C. 35–41–5–2 (Burns Code Ed., Repl. 1979).

The requisite elements are: 1) an agreement to commit a felony, 2) with intent to commit the felony, and 3) an overt act in furtherance of the agreement.

■ Ridgeway alleges the evidence is insufficient to prove the elements of agreement and intent beyond a reasonable doubt. The law does not require a formal agreement. Quoting from *Williams v. State,* (1980) Ind., 409 N.E.2d 571, 573:

"It is sufficient if the minds of the parties meet understandingly to bring about an intelligent and deliberate agreement to commit the offense, even though the agreement is not manifest by any formal words. To prove a conspiracy, the prosecution does not need to show a formal arrangement or the parties' use of specific words. A conviction may rest on circumstantial evidence alone; while evidence of a mere relationship or association is not sufficient, a conspiracy may be inferred from acts of the parties in pursuance of an apparent criminal purpose they have in common." (Citations omitted.)

■ Intent may be inferred from the acts committed and the circumstances surrounding the case. *Williams; Young v. State*, (1971) 257 Ind. 173, 273 N.E.2d 285.

■ The following evidence supports the existence of a conspiracy on January 10, 1978 as alleged in Count I: Ridgeway met with McQuiston at her trailer on January 10, 1978, gave her three prescriptions for 60 quaalude tablets made out to three separate persons: Jan Moles, dated 1–10–77; Kent Huskins, dated 1–10–77; and Larry Reed, dated 1–11–77,[6] not pursuant to a medical examination; asked McQuiston what she would do if she were caught on the street with the pills or prescription; noted that he could not prescribe more than 60 pills in one prescription because it would "look funny"; McQuiston "cashed in" the prescriptions and sold or distributed the drugs. From this evidence, the jury could infer Ridgeway's agreement with McQuiston to sell or distribute drugs and that the agreement was made with the intent to commit that felony. Ridgeway's act of writing the prescription constitutes an overt act that solidifies their agreement into a conspiracy.

Count III charged a conspiracy on January 11, 1978, alleging Ridgeway's prescription for 60 quaaludes made out for McQuiston as the overt act necessary to this independent and separate act of conspiracy. McQuiston stated she asked Ridgeway for

6. There was an apparent scrivenor's error in dating the prescription.

the prescription and that he gave it to her. Ridgeway testified she requested the prescription and he delivered it to her on January 11, 1978. There is sufficient evidence to support this count.

### III and IV  NOTICE OF ALIBI

■ Ridgeway objects to the admission of evidence showing that he was at any place other than that specified in his notice of alibi (notice), and to the trial court's failure to require the State to file more specific response to his notice as provided in I.C. 35–5–1–2 (Burns Code Ed., Repl. 1979). Ridgeway has waived any error by his failure to object to the admission of the State's evidence as to his whereabouts on the dates in question. Failure to object to testimony at trial waives any error on appeal. *Colip v. State*, (1977) 171 Ind.App. 690, 359 N.E.2d 258. Ridgeway did attempt to keep the evidence from being admitted at trial by filing a motion in limine, which was denied. However, this will not suffice to preserve the error. Evidence sought to be excluded by a motion in limine must still be objected to at the time of its introduction at trial for error to be preserved on appeal. *Lagenour v. State*, (1978) 268 Ind. 441, 376 N.E.2d 475.

■ Ridgeway also argues that his failure to object should be overlooked because the evidence would have been admissible under the theory that it supported an inference that a crime was committed and thus an objection would have been useless. Assuming this to be the case, Ridgeway still had the duty to request a limiting instruction and, since he failed to do so, has waived any error. *Wigmore, Evidence* § 13 (1940 ed.), *Northern Indiana Public Service Company v. Millender*, (1940) 108 Ind.App. 212, 24 N.E.2d 817; *Chesapeake and Ohio Railway Co. v. Perry*, (1919) 71 Ind.App. 506, 125 N.E. 414.

■ Furthermore, Ridgeway's notice was couched in such broad language (his alibi was that he was at "among other places, his home at 1404 Arundel Drive, Kokomo, Indiana") that it would not meet

the requirements of IC 35–5–1–1 (Burns Code Ed., Repl. 1979) which requires the notice to "include specific information in regard to the exact place at which defendant claims to have been at the time stated in the indictment or information at the time of such offense." This failure to meet the requirements of IC 35–5–1–1 foreclosed Ridgeway from relying on the provisions of IC 35–5–1–2. *See Shelton v. State,* (1972) 259 Ind. 559, 290 N.E.2d 47; *Hartman v. State,* (1978) Ind.App., 376 N.E.2d 100.

Judgment affirmed as to Counts I and III; cause remanded with instructions to vacate the conviction and judgment on Count IV.

BUCHANAN, C. J., and SULLIVAN, J., concur.