Thomas MONTGOMERY, Appellant (Defendant),

v.

STATE of Indiana, Appellee (Plaintiff).

No. 49S00–9708–CR–465.

Supreme Court of Indiana.

May 11, 1998.

Lesa Lux Johnson, Indianapolis, for Appellant.

Jeffrey A. Modisett, Attorney General, Kimberly Macdonald, Deputy Attorney General, Indianapolis, for Appellee.

SHEPARD, Chief Justice.

Appellant Thomas Montgomery was charged with one count of murder, Ind.Code Ann. § 35–42–1–1 (West 1998), and one count of carrying a handgun without a license, Ind. Code Ann. § 35–47–2–1 (West 1998). The jury found Montgomery guilty of both counts, and the trial judge sentenced him to a term of sixty years for murder and to a term of one year for carrying a handgun without a license, to be served concurrently. Montgomery appeals his conviction and sentence. We affirm.

### Facts

On Monday, June 10, 1996, Indianapolis Police Officer Matthew Elam was on routine patrol when he received a report at about 8 p.m. that a man had been shot in the twenty-one hundred block of North College Avenue. He proceeded directly to the scene of the shooting, arriving less than a minute later, and observed an unidentified man jump out into the street and wave toward the sidewalk. The officer stopped and found Victor Jackson bleeding, lying face down on the sidewalk.

Officer Elam asked Jackson who shot him, but Jackson stated that he had to go home. The officer encouraged Jackson to relax and remain lying down, and again asked Jackson who shot him. Jackson repeated that he wanted to go home. He got up on his knees, but immediately collapsed. Jackson's fiancé, Sandura Stephens, arrived and helped the officer calm Jackson down. She and Officer Elam helped Jackson sit up against a fence. The officer again asked Jackson who shot him, and Jackson said: "Buster shot me." About a minute had passed from the time of Officer Elam's arrival to the time of Jackson's statement.

Jackson was taken to a hospital, where he died shortly after arrival. He had been shot four times, with bullets entering his chin, arm, thigh, and chest. The gunshot to the chest proved fatal. The bullet that entered Jackson's thigh appears to have entered his body from above while he was in a seated position.

Thomas Montgomery, who is also known as "Buster," and Victor Jackson had been long-time friends. Stephens testified, however, that on the weekend before his death, Jackson told her that he had had an argument with Montgomery over disparaging remarks Montgomery had made about her. Amos Mitchell testified that he saw Jackson and Montgomery arguing that weekend, that Jackson threatened to shoot Montgomery if Montgomery continued to insult Stephens, that Jackson pulled a gun on Montgomery, and that Mitchell intervened to stop Jackson from shooting Montgomery. Stephens asked Jackson not to make a big deal of what had been said, and at her request, Jackson did not take his pistol with him when he left Stephens' apartment on the evening he was shot.

After leaving Stephens' apartment, Jackson went to a nearby vacant lot to socialize with friends. Mitchell testified that he had been in the group with Jackson, but left when he saw Montgomery approaching and headed toward a liquor store down the block. He heard gunshots shortly thereafter and saw Montgomery going past him and Jackson running in the opposite direction. Wilfred Martin came out of the liquor store after hearing gunshots and saw a man he identified at trial as Montgomery running toward him, carrying a handgun. After the man had run past him, Martin walked down

the block and found Jackson lying on the sidewalk.

After Montgomery was arrested, he told the investigating officer that he had been in the group with Jackson but had left to go the liquor store before the shooting. As he was walking back to the group, he heard shots being fired, everyone scattered, and he learned later that Jackson had died. Montgomery presented two witnesses who testified that he was near the liquor store talking with someone else when the shots were fired, at which point everyone around started running.

### Issues

Appellant presents the following issues on appeal:

(1) whether the trial court erred in admitting the following hearsay into evidence:

(a) testimony by Officer Elam and Stephens about Jackson's identification of his assailant, and

(b) Stephens' testimony about statements Jackson made concerning an argument he had had with Montgomery; and

(2) whether the trial court properly imposed an enhanced sentence for murder.

### I. Admission of Hearsay

■■■ The Indiana Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ind.Evidence Rule 801(c). Hearsay is generally not admissible in evidence. Evid.R. 802. However, errors in the admission of evidence, including hearsay, are to be disregarded as harmless unless they affect the substantial rights of a party. *See McClain v. State*, 675 N.E.2d 329, 331 (Ind.1996). In determining whether an evidentiary ruling has affected an appellant's substantial rights, we assess the probable impact of the evidence on the jury. *See id.* Admission of hearsay is not grounds for reversal where it is merely cumulative of other evidence admitted. *See id.* at 331–32.

### A. Jackson's Identification of Montgomery as his Assailant

The trial court permitted both Officer Elam and Stephens to testify that Jackson had identified Montgomery as the person who shot him. Jackson's identification is clearly hearsay, as it is an out of court statement offered in evidence to prove the truth of the matter asserted—that Montgomery shot Jackson. The State asserts that it was nevertheless admissible under three hearsay exceptions: (1) excited utterance, Evid.R. 803(2), (2) present sense impression, Evid.R. 803(1), and (3) statement under belief of impending death, Evid.R. 804(b)(2).

■■■ An excited utterance is defined as follows: "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid.R. 803(2). In a case involving a shooting victim's identification of his assailant, this Court has explained:

> For a hearsay statement to be admitted as an excited utterance, three elements must be shown: 1) a startling event occurs; 2) a statement is made by a declarant while under the stress of excitement caused by the event; and 3) the statement relates to the event. Application of these criteria is not mechanical. Rather, under Rule 803(2), like its predecessor common-law doctrine, the heart of the inquiry is whether the statement is inherently reliable because the declarant was incapable of thoughtful reflection....
>
> . ....
>
> A declaration does not lack spontaneity simply because it was an answer to a question. Whether given in response to a question or not, the statement must be unrehearsed and made while still under the stress of excitement from the startling event....
>
> ... [T]he time between the startling event and the hearsay statement is one factor to be considered in determining admissibility as an excited utterance. While a declaration is generally less likely to be admitted if it is made long after the startling event, the amount of time that has passed is not dispositive.... Again, the central issue is whether the declarant was still under the stress of excitement caused by the startling event when the statement was made....

... Being shot is a traumatic event, both physically and psychologically. Its startling effect, depending on the severity of the injury, can continue for hours or longer....

....

... We have addressed in several decisions whether a shooting victim's identification of the assailant was properly admitted as an excited utterance under common law. In nearly every instance, we held the statement to be admissible.... [However], trial courts should not abdicate rational analysis in cases where a shooting victim has fingered a possible perpetrator. Fairness to the defendant requires an assessment of whether the declarant's statement was the product of reflective thought.

*Yamobi v. State,* 672 N.E.2d 1344, 1346–47 (Ind.1996) (citations omitted).

In this case, Officer Elam and Stephens arrived within minutes after Jackson had been shot four times. Jackson was lying face down on the sidewalk and bleeding. While Jackson did not answer the officer's first two inquiries as to the identity of his assailant, Jackson's expressed concern was to reach the safety of his home. After Jackson collapsed while attempting to get up, he answered the officer's third inquiry without hesitation. The officer did not suggest who the assailant might be, and although there were other people in the vicinity, there is no evidence that anyone else suggested that Jackson identify Montgomery in the short time it took for Officer Elam to arrive at the scene.

We conclude that the trial court did not err in admitting into evidence under the excited utterance exception the testimony of Officer Elam and of Stephens that Jackson had identified Montgomery as his assailant. Because the identification was properly admitted on this basis, we need not consider whether any other hearsay exception would also apply.

*B. Jackson's Description of an Argument with Montgomery*

■ The trial court permitted Stephens to testify that the weekend before he was shot, Jackson came to her apartment and reported that he had had an argument with Montgomery over disparaging remarks Montgomery had made about her. Jackson's statement is

hearsay, as it is an out of court statement offered in evidence to prove the truth of the matter asserted—that Montgomery and Jackson had a falling out shortly before the shooting. The State contends that the statement is admissible under the hearsay exception for present sense impression.

Present sense impression is defined as: "A statement describing or explaining a material event, condition or transaction, made while the declarant was perceiving the event, condition or transaction, or immediately thereafter." Evid.R. 803(1). Jackson did not make the statement at issue while perceiving the event, and nothing in the evidence indicates that he was reporting the argument to Stephens immediately after it occurred. Nevertheless, even if the trial court erred in admitting Stephens' testimony on this point, it was merely cumulative of Mitchell's more detailed eyewitness account of the argument. We conclude that the admission of this evidence was at most harmless error. *See McClain,* 675 N.E.2d at 331–32.

**II. Sentencing**

■ The crime of murder carries a presumptive fifty-five year sentence, which may be enhanced by ten years due to aggravating circumstances. Ind.Code Ann. § 35–50–2–3(a) (West 1998). Sentencing decisions are left to the sound discretion of the trial court and will be reversed only upon a showing of a manifest abuse of that discretion. *See Sims v. State,* 585 N.E.2d 271, 272 (Ind.1992).

■ It is within the discretion of the trial court to determine whether a presumptive sentence will be increased or decreased because of aggravating or mitigating circumstances. *See id.* When a trial court enhances a presumptive sentence, however, it must state its reasons for doing so. *See Morgan v. State,* 675 N.E.2d 1067, 1073 (Ind. 1996). The court's statement must identify all significant aggravating and mitigating factors, state why each is considered to be aggravating or mitigating, and weigh the aggravating factors against the mitigating factors. *See Sims,* 585 N.E.2d at 272. "These requirements serve the dual purpose of guarding against arbitrary sentences and providing an adequate basis for appellate review." *Morgan,* 675 N.E.2d at 1074.

In this case, the trial court found the following aggravating factors and enhanced the presumptive sentence by five years: (1) Montgomery's criminal history, (2) the manner in which the murder was committed, and (3) a lesser sentence would depreciate the seriousness of the crime.

### A. Sufficiency of the Sentencing Statement

Montgomery first claims the sentencing statement is insufficient to support an enhanced sentence because it is a mechanical recitation of statutory aggravating factors.

When sentencing Montgomery, the trial court stated that it had considered the following:

> the aggravating factors that Mr. Montgomery has a history of criminal activity, specifically the older robbery that [defense counsel] referenced which did involve peripheral violence . . . and the jury finding relative to the factors as alleged that the decedent, Victor Jackson, was shot four time apparently from a superior position while he was sitting down.

Although a mere recitation of statutory factors is insufficient to support an enhanced sentence, see Erby v. State, 511 N.E.2d 302, 303–04 (Ind.1987), the trial court in this case identified a particular prior serious crime and the specific manner in which Montgomery murdered his victim as aggravating circumstances. We therefore conclude that the sentencing statement was sufficiently specific.

### B. Trial Court's Evaluation of Aggravating Factors

Montgomery next argues that the trial court erred in not considering that his last serious criminal offense was in 1977, and that since that time until his conviction in this case, he had been convicted of only two alcohol-related offenses. He argues that the lack of any recent violent crimes should "offset" the aggravating factors and weigh in favor of the presumptive sentence. Montgomery appears to be arguing that the trial court should have considered as a mitigating factor the fact that nearly twenty years had passed since his last serious offense. See Ind.Code Ann. § 35–38–1–7.1(c)(6) (West 1998).

A trial court must set forth on the record a description of significant mitigating circumstances if the trial court reduces the presumptive sentence or uses mitigating circumstances to offset aggravating circumstances. See Widener v. State, 659 N.E.2d 529, 533 (Ind.1995). However, while a trial court may not ignore facts in the record that would mitigate an offense, a finding of mitigating circumstances is within the trial court's discretion. See id. at 533–34. A trial court is "not required to include within the record a statement that it considered all proffered mitigating circumstances, only those it consider[s] significant." Id. at 534. Moreover, a trial court is not required to give the same weight to proffered mitigating circumstances as the defendant does. See id. at 533–34.

In this case, the sentencing statement indicates that the trial court considered Montgomery's criminal record and the nature and circumstances of the crime to be aggravating factors. These may properly be considered as aggravating factors. See Ind.Code Ann. § 35–38–1–7.1(a)(2), (a)(3)(A), and (b)(2) (West 1998). The trial court apparently did not find Montgomery's lack of recent criminal violence to be sufficiently mitigating to offset these aggravating factors. Under the circumstances, the trial court was not required to state on the record the reasons why it found this factor to be insufficiently mitigating to outweigh the aggravating circumstances. See Widener, 659 N.E.2d at 533–34.

While Montgomery does not specifically challenge the third aggravating factor identified by the trial court, we note that a finding that a lesser sentence would depreciate the seriousness of the crime has application only when considering imposition of a sentence of shorter duration than the presumptive sentence, not when enhancing a sentence. See Penick v. State, 659 N.E.2d 484, 488 (Ind.1995). However, "[d]espite a trial court's use of an improper aggravating circumstance to enhance a sentence, this Court will affirm if the other aggravating circumstances are adequate to support the sentence imposed." Scheckel v. State, 620 N.E.2d 681, 684 (Ind.1993). A single, proper

aggravating factor may be sufficient to support an enhanced sentence. *See Barany v. State,* 658 N.E.2d 60, 67 (Ind.1995). In the present case, the trial court stated two valid aggravating factors. They are sufficient to support imposition of an enhanced sentence.

We therefore find no error in the trial court's imposition of an enhanced sentence.

### Conclusion

Finding no reversible error in either Montgomery's conviction or sentence, we affirm the trial court.

DICKSON, SULLIVAN, SELBY and BOEHM, JJ., concur.