**Mark Anthony THACKER, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

**No. 49S00–9710–CR–524.**

Supreme Court of Indiana.

April 16, 1999.

Rehearing Denied July 13, 1999.

Patricia Caress McMath, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

BOEHM, Justice.

Mark Thacker was convicted of murder, conspiracy to commit murder, burglary, and two counts of conspiracy to commit burglary, all in connection with the death of Monique Hollowell.

In this direct appeal Thacker challenges:

(1) the decision of the trial court to send certain exhibits into the jury room after deliberations had begun,

(2) his sentence for each of the three conspiracy convictions where there was evidence of only one agreement,

(3) the sufficiency of the evidence on the two conspiracy to commit burglary convictions, and

(4) his sentence of 175 years as manifestly unreasonable.

We affirm the convictions for murder, burglary and conspiracy to commit murder, and vacate the two conspiracy to commit burglary convictions.

**Factual and Procedural Background**

Monique Hollowell was strangled to death in her home in the early morning hours of February 29, 1996. Thacker was charged by information with eight counts: murder, felony murder, conspiracy to commit murder, two counts of conspiracy to commit burglary, two counts of burglary and criminal deviate conduct. One count of burglary and the criminal deviate conduct count were dismissed during the trial.

*Thacker's Version of Events*

Evidence at trial consisted primarily of Thacker's statements to the police. Thacker's version follows. He and Anthony Hollowell were friends from childhood. In late 1995, Anthony and Thacker began to discuss a plan to kill Monique, Anthony's wife. The two hoped to collect under an insurance policy on Monique's life and start their own business. Although willing to help, Thacker was unwilling to be the killer. Anthony then asked Richard White to join the plan and commit the murder. The three planned to make the murder appear as if it had occurred in the course of a robbery while Anthony was out of town. Anthony was to break the glass in the back door of the apartment to provide access to the apartment. Thacker's role was not to kill Monique, but rather only to confirm she was dead. Hollowell agreed to pay $20,000 to Thacker and $10,000 to White for the murder. After the plan had been formulated, Thacker and White brought in Frank Turnley to help White carry out the actual killing. White was to pay Turnley $5,000 of his $10,000.

On the afternoon of February 28, Thacker and Turnley went to the Hollowells' apartment to verify that Anthony had broken the glass in the back door as agreed. Thacker then met Turnley and White at a gasoline

station sometime after 11:00 p.m. that night. Turnley and White were to go to the Hollowells' apartment to commit the murder. Thacker would visit the apartment later to confirm that Monique was dead. Thacker then picked up his brother-in-law, Maurice Hunt, and the two proceeded to the Hollowells' apartment. Thacker purposefully brought Hunt along to serve as a witness that he did not kill Monique. Sometime between leaving White and Turnley at the gasoline station and arriving at the Hollowells' apartment, Thacker returned to his own apartment and watched David Letterman on television. When Thacker and Hunt arrived at the Hollowells' apartment around 2:00 a.m., White and Turnley were gone and Monique was dead. Shortly thereafter, Thacker, Hunt, Turnley and White met at a second gasoline station where Turnley and White recounted the details of Monique's murder.

*Other Evidence*

The State offered several witnesses to dispute Thacker's version of events. Anthony Hollowell testified that he did not ask Thacker to kill his wife and that he had nothing to do with his wife's murder. Similarly, Richard White testified that he had no part in Monique's murder. Hunt, Thacker's brother-in-law, denied seeing Thacker on the day of the murder. Thacker's wife testified that after Thacker left their apartment at 7:00 p.m. on the 28th, he did not return until approximately 3:20 a.m., long after the Letterman show was over. She also testified that she saw Turnley in the Thackers' car in their apartment parking lot at approximately 8:00 a.m. on February 29. A screwdriver found under the driver's seat of Thacker's car matched the gouge in the door of the Hollowells' apartment through tool identification markings but analysis of the screwdriver revealed no glass or wood fragments and the tool could not be conclusively linked to the Hollowells' door.

*Jury Deliberations*

After deliberations had begun, the jury sent a note to the trial court asking for copies of the transcripts of the two taped statements given to police by Thacker and a copy of a letter Thacker wrote to Anthony Hollowell while Thacker was in jail awaiting trial. The letter and the tapes had been admitted at trial but transcripts of the tapes had not. After a hearing, and over Thacker's objection, the trial court sent all of the admitted exhibits to the jury, including the tapes and the letter, but did not send the unadmitted transcripts of the tapes.

The jury returned guilty verdicts on all six remaining counts. The trial court merged the murder and felony murder convictions and sentenced Thacker to sixty-five years for murder, fifty years for conspiracy to commit murder, twenty years for each count of conspiracy to commit burglary and twenty years for the burglary, all to be served consecutively for a total sentence of 175 years.

## I. Exhibits to the Jury

### A. *Indiana Code § 34-36-1-6*

Thacker argues that the trial court committed reversible error when it sent the trial exhibits to the jury room after deliberations had begun. Citing *Powell v. State,* 644 N.E.2d 855 (Ind.1994), Thacker contends that the trial court's decision to "allow the jury to review specific pieces of evidence 'alone and unguided by the court' " violated his substantive right to be present when the jury reviews evidence as protected by Indiana Code § 34-36-1-6 (1998).[1] The statute provides:

> If, after the jury retires for deliberation:
>
> (1) there is a disagreement among the jurors as to any part of the testimony; or
>
> (2) the jury desires to be informed as to any point of law arising in the case; the jury may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or the attorneys representing the parties.

*Id.*

■ As explained in *Bouye v. State,* this section is triggered where (1) the jurors "explicitly indicate[ ] a disagreement" as to any

1. At the time of trial, this section appeared at Indiana Code § 34-1-21-6 (1993). Although the recodified version incorporates minor editorial changes, the two versions are substantively the same.

part of the testimony or (2) the jurors desire to be informed as to any point of law. 699 N.E.2d 620, 627–28 (Ind.1998). In this case, neither occurred. Rather, the jury merely requested to review certain exhibits. *See also Gibson v. State,* 702 N.E.2d 707 (Ind. 1998) (statute inapplicable where jury requested to view evidence and did not show disagreement); *Robinson v. State,* 699 N.E.2d 1146 (Ind.1998) (statute inapplicable where jury note did not suggest disagreement). Sending the exhibits admitted at trial to the jury was not error under the statute.

B. *Case Law Standard*

If the statute is inapplicable, the trial court should consider three factors in deciding whether to permit the jury to take a copy of the exhibits into the jury room.

(1) whether the material will aid the jury in a proper consideration of the case;

(2) whether any party will be unduly prejudiced by submission of the material; and

(3) whether the material may be subjected to improper use by the jury.

*Robinson v. State,* 699 N.E.2d at 1150 (citing *Thomas v. State,* 259 Ind. 537, 540, 289 N.E.2d 508, 509 (1972)). Thacker argues that the tapes of his statements to police were subject to "undue influence" and "misuse" by the jury and that the trial court's failure to supervise the jury while it listened to the tapes is reversible error requiring a new trial. Thacker asserts that the crucial difference between his case and those where tape recordings were properly submitted to the jury is that here they were given to the jury after deliberations had begun and after a specific request by the jury for the tapes.

As we concluded in *Robinson,* the same factors govern a trial court's decision to send exhibits to the jury before or during deliberations. 699 N.E.2d at 1150. In this case, all three factors support the trial court's decision. If the jury requests particular pieces of information, presumptively that information will aid the jury in proper consideration of the case. In the absence of any showing as to why that is not the case, the first factor is satisfied. Next, there is no evidence of prejudice or, as Thacker puts it, "undue influence," because the trial court gave the jury all of the admitted exhibits, not only those it requested, in order to avoid any emphasis, real or perceived, on a particular exhibit. Finally, in response to Thacker's concern that the jury could improperly rely on the unadmitted transcripts, the trial court did not give them to the jury and sent only admitted exhibits. Accordingly, the trial court did not abuse its discretion in sending all of the admitted exhibits to the jury.

## II. Multiple Conspiracy Convictions

The State charged Thacker with three counts of conspiracy: one for conspiring to commit murder, one for conspiring to commit burglary when Thacker and Turnley went to the Hollowells' on the afternoon of February 28 and another for conspiring to commit burglary when they returned early on February 29. The jury found Thacker guilty as to all three.

Thacker argues that because "[o]nly one agreement was entered into and that was to kill Monique Hollowell" the trial court erroneously sentenced him on all three conspiracy convictions. Thacker is correct that Indiana has a general conspiracy statute and therefore where there is evidence of only one agreement, there can be only one conspiracy conviction. As Chief Justice Stone put it in the seminal case on this point: "[w]hether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes." *Braverman v. United States,* 317 U.S. 49, 53, 63 S.Ct. 99, 87 L.Ed. 23 (1942). Beginning with Judge Shields' thoughtful opinion in *Ridgeway v. State,* 422 N.E.2d 410, 413 (Ind.Ct.App.1981), Indiana courts have continued to apply the one agreement, one conviction rule, usually citing *Braverman. See e.g. Clark v. State,* 530 N.E.2d 1182, 1184 (Ind.1988); *Perkins v. State,* 483 N.E.2d 1379, 1386 (Ind.1985); *Sharp v. State,* 569 N.E.2d 962, 969 (Ind.Ct. App.1991); *Koger v. State,* 513 N.E.2d 1250, 1256 (Ind.Ct.App.1987).

Some decisions of this State have set aside multiple conspiracy convictions where there is evidence of only one agree-

ment and cited double jeopardy, as opposed to statutory interpretation or general conspiracy doctrine, as the basis of this rule. *See, e.g., Gregory v. State,* 524 N.E.2d 275, 278 (Ind.1988). Other cases refer to parties' contentions that the multiple convictions present double jeopardy, but do not expressly base the decision on double jeopardy grounds. *See Perkins,* 483 N.E.2d at 1386; *Ridgeway,* 422 N.E.2d at 413; *cf. Games v. State,* 684 N.E.2d 466, 478 (Ind.1997) (citing *Gregory* but not holding that multiple conspiracy convictions violate double jeopardy protection), *reh'g granted in part* 690 N.E.2d 211 (Ind.1997), *cert. denied* — U.S. —, 119 S.Ct. 98, 142 L.Ed.2d 78 (1998). The result is the same under either view: a single agreement to violate multiple criminal statutes does not constitute multiple crimes. It is clear however, that Chief Justice Stone's opinion in *Braverman* is not based on double jeopardy. Rather, the one conspiracy, one conviction rule derives from the notion that the agreement is the criminal act, and therefore one agreement supports only one conspiracy, even if multiple crimes are the object of the agreement.[2] In this case, the evidence does not support the conclusion that there were three separate agreements, at least not the three charged in the information.

The State recognizes the need for three separate agreements to support sentencing on all three conspiracy convictions. Specifically, the State argues that the jury could have reasonably concluded that the first conspiracy to commit burglary took place on the afternoon of February 28 when Thacker and Turnley went to the Hollowells' apartment. The State contends that the jury could have reasonably concluded that a second agreement to commit burglary was reached after that point and that Thacker and Turnley returned in the early hours of February 29 to effect this second plan. For the third conspiracy, the State points to Thacker's statements that two intruders forced Monique upstairs at knife-point after she discovered them in her house. From this the State reasons that the jury could have concluded that the agreement to kill Monique was reached only after Monique discovered the two in the midst of the second burglary. Although in Thacker's account the intruders were White and Turnley, the State contends that the jury could have concluded that these two were Thacker and Turnley. The State further argues that the fact that the body and the knife were found upstairs supports this version of events.

Apparently the State expected Turnley to confirm its theory of an interrupted burglary and was surprised by Turnley's decision to invoke his Fifth Amendment rights. Whether our speculation about Turnley's anticipated testimony is correct or not, the State offers a plausible view of the facts, but the evidence in the record does not support it. There is no evidence in this record to support any conspiracy to commit burglary by theft. Although not conclusive on this point because a conspiracy does not require consummation of the burglary, it is noteworthy that cash was in the apartment and known to Thacker, and was not taken. More importantly, evidence in the record, including Thacker's statements to police, would support both a conspiracy to commit murder and a conspiracy to commit burglary by murder, but the conspiracies to commit burglary charged in the information were burglary with intent to commit theft. Two of the other alleged conspirators denied any agreement and Turnley did not testify. Thacker's version alone supports one conspiracy charge. Whatever the

2. Whether Thacker's three conspiracy convictions are proper turns on whether there were three separate agreements or "whether there was one overall agreement among the various parties to perform various functions in order to carry out the objectives of the conspiracy." *Ridgeway,* 422 N.E.2d at 413 (citation omitted). In determining whether there was one overall agreement, relevant factors include: the nature of the criminal scheme, common participants, proximity in time, and the conspirator's involvement in each crime. *Mftari v. State,* 537 N.E.2d 469, 475 (Ind.1989); *Ridgeway,* 422 N.E.2d at 414. In *Mftari* coconspirators burglarized several rooms at a hotel within one hour. This Court held that the evidence did not allow a reasonable inference that the defendant entered into three separate agreements with his companion to commit three burglaries. *Id.* 537 N.E.2d at 475; *see also Huffman v. State,* 543 N.E.2d 360, 380 (Ind.1989) (conviction and sentence vacated where facts indicated that coconspirators committed several criminal acts pursuant to a single conspiracy).

information available to the State from other sources, the evidence in this record supports a single conspiracy to commit murder and no other charged conspiracy. Accordingly, we remand with directions to vacate both conspiracy to commit burglary convictions.

**III. Sufficiency of the Evidence**

Thacker contends that the evidence is insufficient to support either count of conspiracy to commit burglary because there is no evidence of an agreement as to the first count and no evidence of the overt act charged in each count. He does not challenge the sufficiency of evidence on the murder, conspiracy to commit murder or burglary convictions. These claims are moot because we vacate both conspiracy to commit burglary convictions for the reasons set forth in Part II.

**IV. Sentencing**

Thacker contends that his aggregate sentence of 175 years is manifestly unreasonable because the trial court improperly identified aggravating circumstances based on evidence at Turnley's trial that was not in the record in his case. Thacker also contends that the trial court did not give enough weight to his lack of criminal history and the hardship his imprisonment would cause his two dependents as mitigating circumstances. Finally, he argues that "the maximum sentence for murder is sixty-five years. The trial court did not identify any proper aggravating circumstances that make this murder so horrible that the sentence for Mr. Thacker should be almost three times the maximum for murder."

Thacker makes each of these arguments under the heading "manifestly unreasonable," the standard for review and revision of sentences as articulated by Appellate Rule 17. Some, however, concern alleged errors in the sentencing statement.

A. *The Sentencing Statement*

In general, sentencing determinations are within the trial court's discretion and are governed by Indiana Code § 35-38-1-7.1 (1998). *Harris v. State,* 659 N.E.2d 522, 527 (Ind.1995). If a trial court uses aggravating or mitigating circumstances to enhance or reduce the presumptive sentence, or to impose consecutive sentences, it must (1) identify all significant mitigating and aggravating circumstances; (2) state the specific reason why each circumstance is determined to be mitigating or aggravating; and (3) articulate the court's evaluation and balancing of the circumstances. *Id.* at 527-528. *See also Widener v. State,* 659 N.E.2d 529, 534 (Ind. 1995) (failure to articulate circumstances may imply that the trial court failed to properly consider them). The court in this case identified mitigating and aggravating circumstances on the record, stated why it found these circumstances to be mitigating or aggravating, and discussed why it concluded that the aggravating circumstances outweighed the mitigating circumstances. Thacker contends that the trial court erred when it identified as aggravating circumstances that "the children w[o]ke up screaming" and "watched their mother be[ing] killed," the murder was "for a tax refund check" and Thacker was the one who committed the murder.

Thacker argues that there is no evidence to support these circumstances in the record of the case and that, for these factors, the trial court relied on its knowledge of facts presented in Turnley's trial. The trial court is not limited to admissible evidence in evaluating aggravating and mitigating circumstances. Ind. Evidence Rule 101(c)(2) (evidence rules do not apply to sentencing proceedings); *Jackson v. State,* 697 N.E.2d 53, 55 (Ind.1998). Moreover, this information was contained in the probable cause affidavit attached to the sentencing report.

In any event, another similar aggravating circumstance supports Thacker's sentence. In addition to the aggravating circumstances objected to by Thacker, the trial court found as aggravating circumstance the fact that Thacker "walk[ed] out of a house having killed a lady that had done absolutely nothing to harm Defendant and le[ft] a couple of little children who would be found later with the dead mother [to be] absolutely abhorrent. . . ." This aggravating circumstance, factually similar to one he contests, is supported by the fact of Monique's death, by police officer testimony about find-

ing the children and their dead mother in the apartment when they arrived, and by Thacker's own statements that Monique was dead and that the children were in the house when he left the Hollowells' apartment. The "nature and circumstances" of the crime is a proper aggravating circumstance. *Montgomery v. State,* 694 N.E.2d 1137, 1142 (Ind. 1998); *see also* IND.CODE § 35-38-1-7.1(a)(2) (1998). A single aggravating circumstance may be sufficient to support imposition of an enhanced sentence. *Montgomery,* 694 N.E.2d at 1142-43; *Wills v. State,* 578 N.E.2d 363, 365 (Ind.1991). The same circumstance may be used to both enhance a sentence and impose consecutive sentences. *Holmes v. State,* 642 N.E.2d 970, 973 (Ind. 1994); *Marshall v. State,* 621 N.E.2d 308, 322 (Ind.1993); *McCollum v. State,* 582 N.E.2d 804, 817 (Ind.1991). The trial court relied on at least one properly supported aggravating circumstance to enhance Thacker's sentences and to impose consecutive sentences. Accordingly we cannot conclude that the trial court abused its discretion under the statute and related case law.

B. *Requested Review and Revision of Sentence*

Although this Court has the constitutional authority to review and revise sentences, IND. CONST. art. VII, § 4, it will not do so unless the sentence imposed is "manifestly unreasonable in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 17(B). The Court has further addressed this standard: "the issue is not whether in our judgment the sentence is unreasonable, but whether it is clearly, plainly, and obviously so." *Brown v. State,* 698 N.E.2d 779, 783-84 (Ind.1998) (citing *Prowell v. State,* 687 N.E.2d 563, 568 (Ind.1997), *cert. denied* — U.S. —, 119 S.Ct. 104, 142 L.Ed.2d 83 (1998)).

Accordingly, the trial court's assessment of the proper weight of aggravating and mitigating circumstances and the appropriateness of the sentence as a whole are entitled to great deference and will be set aside only upon a showing of a manifest abuse of discretion. *Willsey v. State,* 698 N.E.2d 784, 796 (Ind.1998). To overcome this hurdle, Thacker must demonstrate that the trial court's finding that the aggravating circumstances outweighed the mitigating circumstances was a manifest abuse of discretion or, in other words, that his total sentence is "clearly, plainly, and obviously" unreasonable.

Thacker argues that the trial court did not give enough weight to the mitigating circumstance that Thacker had no prior criminal history and as a result under these circumstances the sentence of "almost three times the maximum for murder" is manifestly unreasonable. As it was entitled to do, the trial court considered Thacker's lack of prior criminal history but declined to accord it significant weight. *See Bunch v. State,* 697 N.E.2d 1255, 1258 (Ind.1998); *Kingery v. State,* 659 N.E.2d 490, 498 (Ind. 1995). The trial court is not required to give the same weight to proffered mitigating circumstances as defendant does. *Montgomery,* 694 N.E.2d at 1142; *Battles v. State,* 688 N.E.2d 1230, 1236 (Ind.1997).

In contrast with cases where this Court has reduced sentences for failure to consider a mitigating circumstance entirely, the trial court in this case acknowledged the mitigating circumstances offered by Thacker and concluded that the circumstances of the crime outweighed the mitigating circumstances. *Cf. Mayberry v. State,* 670 N.E.2d 1262, 1271 (Ind.1996) (where sentencing court failed to find mental illness as a significant mitigating circumstance, sentence was manifestly unreasonable); *Widener,* 659 N.E.2d at 534 (enhanced and consecutive sentences were manifestly unreasonable where trial court failed to consider several significant mitigating circumstances).

In light of the convictions for murder, conspiracy to commit murder and burglary, none of which Thacker contests in this appeal, and the trial court's proper consideration of aggravating and mitigating circumstances, Thacker's sentence does not reach the egregious circumstances required before this Court will reduce a sentence. *Page v. State,* 689 N.E.2d 707, 712 (Ind.1997) ("We are not persuaded that his sentence was so egregious as to be manifestly unreasonable."); *see also Holmes v. State,* 642 N.E.2d 970, 973 (Ind.

1994) (sentence not manifestly unreasonable in light of heinous nature of the offenses and appropriate weighing of aggravating circumstances by the trial court). Although very severe, Thacker's sentence is not clearly, plainly and obviously unreasonable.

Finally, Thacker contends that the 195 year sentence found on the Abstract of Judgment and Chronological Case Summary (CCS) is erroneous because the trial court sentenced Thacker to twenty years on Count IV, not forty. The State agrees that the Abstract and CCS contain typographical errors. Because we remand to vacate the conviction on that count, the issue is moot.

**Conclusion**

Thacker's convictions for murder, conspiracy to commit murder and burglary are affirmed. The case is remanded with direction to vacate the two convictions for conspiracy to commit burglary.

SHEPARD, C.J., and DICKSON and SELBY, JJ., concur.

SULLIVAN, J., concurs except as to sentence.